*EX PARTE* CHASE, AS TRUSTEE OF THE BANKRUPT ESTATE OF THOS. D. RHODES.
*IN RE* HENRY SONNEBORN & CO. v. THOS. D. RHODES.

1. ATTACHMENT.—AN AMENDMENT of a complaint on a debt not due after attachment of property thereunder, does not avoid the attachment.

   *Addison* v. *Sujette,* 50 S. C., 192, *distinguished from this.*

2. IBID.—BANKRUPTCY—BANKRUPT ACT.—Attachment obtained by a creditor within four months before his debtor is declared an involuntary bankrupt, where (1) attachment action was brought without the knowledge of the debtor; (2) the creditor had no knowledge of the insolvency of his debtor; (3) attachment is not predicated on insolvency, but upon attempts of the debtor to conceal and dispose of his property, and (4) the creditor had no reason to believe his debtor contemplated bankruptcy, are not void under subdivision c, of sec. 67 of the bankrupt act of 1898, and that section is construed as an exception to the general provisions in subdivision f of same section.

Before KLUGH, J., Florence, September, 1899. Reversed.

Petition by Robert E. Chase, as trustee of the bankrupt estate of Thos. D. Rhodes, in the case of Henry Sonneborn & Co. against Thos. D. Rhodes, and in the cases of sixteen other plaintiffs against the same defendant, asking that attachment obtained by said plaintiffs in the Court of Common Pleas be set aside. From Circuit judgment setting aside the seventeen attachments, the plaintiffs appeal.

*Messrs. Mitchell & Smith* and *Willcox & Willcox,* for appellants, cite: *As to the powers of this Court in construing and enforcing the bankrupt act:* 20 Sup. Ct. R., 564; 91 U. S., 521; 160 U. S., 583; 111 U. S., 624. *Rule prescribing the construction of statutes in such cases:* 37 S. C., 400; 107 U. S., 152. *Construction of subdivisions c and f of sec. 67 of bankrupt act:* 143 Mass., 562; 23 Ency., 428; W. Jones, 26; 5 Bing., 180; 26 Beav., 533; 38 N. J. L., 67; 4 Ch. Div., 395; 129 N. Y., 138; 42 Fed. Rep., 23; 91 Fed. R., 96. *Are*
23—62

*attachments valid under subdivision c?* 17 Wall., 473; 96 U. S., 539. *Amendment allowed to complaint did not destroy the actions or attachments:* Secs. 11a and 17a, Bankrupt Act; 52 N. H., 301. *Attachments can issue where debt was incurred in fraud and false representation:* Code, 248; 31 S. C., 368; 63 How. Pr., 491; 25 Hun., 395; 31 Hun., 325; 47 Hun., 237.

*Messrs. Asher D. Cohen, J. E. Burke, W. F. Clayton* and *J. P. Neil,* for trustee, contra, cite: *Proceedings to set aside attachments are in due and proper form:* 43 S. C., 176; 53 S. C., 106. *Amendments to complaint dissolved attachments:* Code, 255a; 50 S. C., 192; Drake on Attach. B.; p. 385, sec. 437; Code, 167; 39 N. E. R., 532; 47 S. W. R., 740; 8 S. C., 82. *Attachments should be set aside under U. S. bankrupt law:* Bankrupt acts 1867, 1898; Fed. Cases, 6288, 7305, 12556, 8714; 104 U. S., 228; 97 Fed. R., 923, 926; 94 Fed. R., 1001; 96 Fed. R., 812; Sedg. on Con. of Stats. and Con. Law, 353; 99 Fed. R., 920; 98 Fed. R., 399, 722; 93 Fed. R., 419; 100 Fed. R., 434; 97 Fed. R., 775; 98 Fed. R., 86; 97 Fed. R., 566; 96 Fed. R., 935.

April 18, 1901. The opinions herein were filed on this day, but the remittitur stayed on petition for writ of error to United States Supreme Court. No further order having been taken in this Court, the Reporter thinks best to publish the case now.

MR. JUSTICE POPE. It seems that between the dates of the 8th day of October, in the year 1898, and the 19th day of the same month and year, Henry Sonneborn & Co. and sixteen other persons, firms and corporations as plaintiffs, respectively, began their respective seventeen actions against Thomas D. Rhodes, as defendant, on money demands which were not yet due, alleging in their complaint that the said Thomas D. Rhodes has assigned, disposed of or secreted some of his property with intent to defraud his creditors, and

is about to assign, secrete or dispose of more of his property with like intent, and thereby these plaintiffs, respectively, have the right, under the provisions of sec. 255 of the Code of Civil Procedure of the State of South Carolina, to bring actions on said accounts at this time—that is, before the maturity of their respective demands. That on the date on which each of said seventeen actions was commenced, respectively, to wit: on the 8th, 16th and 19th days of October, 1898, the respective plaintiffs obtained from the clerk of the Court of Common Pleas for Florence County, in the State of South Carolina, under the provisions of the laws of said State regulating attachments, writs of attachments whereby the sheriff of said Florence County, in said State, seized all the property of the defendant, Thomas D. Rhodes, that he could find in his county (Florence), to satisfy the debts sued upon by the seventeen plaintiffs, respectively. That a few days thereafter, under the order of Judge O. W. Buchanan, resident Judge of the Third Judicial Circuit of South Carolina, the said sheriff sold all of the property he had seized belonging to the defendant, Thomas D. Rhodes, and realized the sum of $6,300, which by the terms of the order of Judge Buchanan was turned over to the clerk of said Court of Common Pleas for Florence County, S. C., and by him was paid into the Bank of Florence, S. C., to the credit of the Court of Common Pleas for said Florence County, S. C. That service of summons in the seventeen actions of the creditors hereinbefore referred to, was made, owing to the absence of the defendant, Thomas D. Rhodes, from the limits of the State of South Carolina, upon said defendant by publication. That on the 2d day of November, 1898, the remaining creditors of the said Thomas D. Rhodes, exclusive of the seventeen creditors who had already brought their suits and obtained seventeen writs of attachment against the defendant, Thomas D. Rhodes, filed their joint petition in the District Court for the District of South Carolina, sitting as a Court of Bankruptcy, whereby they sought to have the said Thomas D. Rhodes adjudged a

bankrupt, in accordance with the provisions of the act of Congress duly enacted in the year 1898; and that under such petition an order was passed, fixing the 14th of January, 1899, for a hearing under said petition. That on the 14th of January, 1899, such hearing was had, and on the 28th day of January, 1899, said Thomas D. Rhodes was duly adjudged a bankrupt. That on the    day of            1899, by an order passed by the Hon. William H. Brawley, as United States Judge for the District of South Carolina, the seventeen creditors who had sued out the seventeen writs of attachment in the Court of Common Pleas for the county of Florence, in the State of South Carolina, were required to show cause why they should not be restrained from any interference with the attached property until the further order of the District Court for the District of South Carolina, sitting as a Court in Bankruptcy. This order was granted. The petitioner, Robert C. Chase, was then duly elected and appointed trustee of the estate of Thomas D. Rhodes, a bankrupt. That soon thereafter his Honor, Judge Brawley, passed an order authorizing the said Robert C. Chase, as said trustee, to intervene by petition in the seventeen actions already pending by the plaintiffs, who had attached, in the Court of Common Pleas for Florence County, in said State of South Carolina, asking the judgment of said Court of Common Pleas for Florence County to set aside the seventeen attachments which had issued out of said Court of Common Pleas for Florence County, S. C., and requiring the said clerk of the Court of Common Pleas for Florence County, S. C., to pay over the $6,300 then in the Bank of Florence, S. C., unto the said Robert C. Chase, as said trustee. That accordingly the said Robert C. Chase, as said trustee, duly presenting his petition to the Court of Common Pleas for Florence County, S. C., in each of the seventeen actions therein pending, to set aside said seventeen warrants of attachment, and also to have the clerk pay over the $6,300 as the proceeds of the property of said Thomas D. Rhodes when sold by the sheriff of Florence County, S. C., unto

the petitioner, Robert C. Chase, as said trustee. Under an order of Judge Brawley, the plaintiffs in the seventeen suits in the Court of Common Pleas were allowed to oppose the granting of the order applied for by Robert C. Chase, as trustee, by said Court of Common Pleas. Under an order of the Circuit Judge presiding over the Court of Common Pleas for Florence County, S. C., testimony was taken in regard to the attachments. All these matters came on to be heard before his Honor, Judge Klugh, in the Court of Common Pleas for Florence County, S. C., and he pronounced the following judgment: "This case came on to be heard upon the petition, the answer and the testimony reported by the special referee, and after duly hearing all the same, and counsel on both sides having been heard, it is upon consideration of the same finally ordered, decreed and adjudicated, as follows: I find the following to be the facts of this case: In October, 1898, Thomas D. Rhodes, of Florence, was indebted to Henry Sonneborn & Co. and the other creditors mentioned in the sixteen other like suits referred to in the petition herein, in the amounts respectively set forth and claimed therein against Thomas D. Rhodes. That during the month of October, 1898, and prior to the filing of any petition for involuntary bankruptcy against the said Thomas D. Rhodes, the said creditors took out in proper form attachments against the property of the said T. D. Rhodes, in the Court of Common Pleas for Florence County. These attachments are all regular and sufficient in form. Under these attachments and by order of the Court of Common Pleas for Florence County, in the several cases, the attached property was sold, and the proceeds deposited in the registry of this Court. The grounds or basis of the attachments in these cases was that the defendant, T. D. Rhodes, had concealed or removed his property with intent to defraud his creditors. The circumstances indicate an attempt to conceal his property so as to defraud his creditors. There was no sufficient evidence to show that any of the attaching creditors had reasonable cause to believe that Thomas D. Rhodes

was insolvent at the time they attached; however, they might believe that he intended to conceal his property with intention to defraud his creditors. These attachments were obtained on the ground of fraud and *in invitum* against the said Thomas D. Rhodes, and without any knowledge or permission on his part or any collusion whatsoever between himself and any of the attaching creditors or their attorneys.

"I, therefore, find that as a conclusion of fact, no preference was given or permitted by these attachments, and their existence and enforcement will not work a preference. I find further, that neither the attaching creditors nor their attorneys had reasonable cause to believe the defendant, Thomas D. Rhodes, was insolvent and in contemplation of bankruptcy when these attachments were taken out, and that the liens created by the attachments were not sought and permitted in fraud of the provisions of the bankrupt act.

"On the 2d of November (several days after these attachments were levied and the property attached had been sold and converted into money, and the money deposited in this Court), a petition in involuntary bankruptcy against Thomas D. Rhodes was filed in the United States District Court for the District of South Carolina, and on this petition the said Thomas D. Rhodes was afterwards adjudged a bankrupt. On the     day of November, 1898, Judge Buchanan, upon application of the plaintiffs in most of the attachment suits, ordered that the complaints be amended by inserting the following clause: 'And that the debt sued for was incurred by the defendant, T. D. Rhodes, through his having obtained property, to wit: said goods, wares and merchandise, by fraud and by pretenses and false representations, and that but for said false pretenses and false representations, said debt could not have been incurred by said T. D. Rhodes.' After this adjudication in bankruptcy, the petitioner, Robert C. Chase, was appointed as trustee under the terms of the bankruptcy act, and has filed his petition in this Court in this cause, praying 'that he be held to be entitled to move to set aside said attachments, and that he be

allowed so to do and to have the fund and property in the custody of this honorable Court turned over to him.' The petitioner, Robert C. Chase, trustee, has advanced as grounds why the attachment in this case should be set aside, two general grounds : the first upon matters not resting upon the bankrupt act, and the other upon matters under the bankrupt act.

"For matters not resting upon the bankrupt act, the trustee claims : First. That the amendments made to the complaint herein by the order of Judge Buchanan, so far altered and amended the cause of action as to entirely destroy the original cause of action, and create a new one; and the attachments as an incident to that original cause of action was abandoned and destroyed by the amendments. Under the Code of Procedure, sec. 194, the Court may, before or after judgment, in furtherance of justice, amend any pleadings, process or proceedings, when the amendment does not change substantially the claim or defense. In the present case, the amendment allowed by Judge Buchanan amends the complaint by characterizing the cause of action sued upon as having been accompanied by the incident that it was occasioned or brought about by false representations and false pretenses. I must assume that Judge Buchanan, when he allowed this amendment, was satisfied that the amendment was one proper to be allowed in furtherance of justice and material, and that it did not substantially change the claim; and his finding upon that point is one, I think, which should control the Court; and I, therefore, hold that the allowing of this amendment did not destroy the action so as that the attachment based thereon was waived and destroyed thereby.

"Second. The next ground advanced by the petitioner, Robert C. Chase, for setting aside the attachments outside of the bankrupt law, is that an attachment cannot be issued in cases of tort or fraud similar to this. I do not think the authorities cited support the contention in the present case. While an attachment may not be allowed in cases of slander or other similar cases where it is impossible to definitely fix

the amount for which the attachment should issue, in the present case that amount is fixed by the value or price of the goods sold, for which fixed, liquidated amount and to recover the value of which as so agreed and liquidated, this action is brought. The amendments do not make the amounts claimed to be recovered when liquidated, unliquidated or uncertain; but have the effect of charging that this fixed liability was incurred and the liability arose by reason of false representaions and false pretenses. I, therefore, hold that an attachment should not be set aside as having been wrongfully issued in a case like this.

"For matters under the bankrupt law, for which the attachment should be set aside, the petitioner, Robert C. Chase, relies upon:

"First. Subdiv. c, of sec. 67, of the bankrupt act. That subdivision provides that a lien obtained in or pursuant to any suit or proceedings, including an attachment upon mesne process, which was begun against a person within four months before the filing of a petition for bankruptcy, by or against such person, shall be dissolved by the adjudication of such person to be bankrupt; if (1) It appears that said lien was obtained and permitted while the defendant was insolvent, and that its existence and enforcement will work a preference. I think the words 'obtained and permitted * * * so as to work a preference' in this section mean, that the bankrupt himself shall procure, or by some act of his knowingly suffer and permit an attachment to be procured or entered against him, so as that the party procuring or entering the same shall thereby obtain a preference. As I have already found as a conclusion of fact in this case that these present attachments were obtained without any knowledge or permission on the part of Rhodes, but by his creditors in hostile character against him, for the purpose of protecting themselves against Rhodes' apparent intention to conceal and dispose of his property so as to defeat the claim of his creditors, I must hold that under this clause the attachments cannot be set aside.

."The same subdivision c provides further that the attachments should be set aside if, (2) The party or parties to be benefited thereby had reasonable cause to believe that the defendant was insolvent, and in contemplation of bankruptcy. The evidence does not satisfy me that the creditors who attached in this cause had any reasonable cause to believe that T. D. Rhodes was insolvent. Each creditor attaching knew of the amount of his own claim, but I find no evidence to show that he was aware of the aggregate of claims against T. D. Rhodes, so as to be aware that he was insolvent. On the contrary, the attachments in this cause are not predicated upon any supposed insolvency on the part of Rhodes, but upon his attempts to conceal and dispose of his property so as to defraud his creditors, including the particular creditor who attached in each cause. Nor is there any testimony to show that any of the creditors attaching had reason to believe that the defendant, Rhodes, was in contemplation of bankruptcy. I, therefore, hold that under this clause of section 67, also, the attachments cannot be set aside.

"But the language of subdiv. f, sec. 67, is, that all levies, judgments, attachments or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of the petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levies, judgments, attachments or other liens shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt. The language of this section, it seems to me, is imperative. It declares all such attachments obtained against persons who are insolvent at any time within four months prior to the filing of the petition in bankruptcy against them shall be deemed null and void. I, therefore, hold that under the language of this section, which is imperative upon this Court, the attachments in this case were obtained within four months before the adjudication of T. D. Rhodes as a bank-

rupt, and when he was insolvent, and that, therefore, the attachments must be set aside; and it is so ordered.

"The attaching creditors having expressed to the Court their intention to appeal from this order, it is ordered, that the fund in question shall be retained in the Court subject to the final decision upon appeal of the question involved, unless within the time fixed by law for taking an appeal no appeal was taken, but that if an appeal be taken, no payment shall be made of the fund in Court to any of the parties until the determination of such appeal; the fund in Court then to be paid in accordance with the ultimate determination upon such appeal.

"With regard to the injunction prayed for in the petition herein, counsel for Robert C. Chase, trustee, have withdrawn any application for injunction, and, therefore, it is not necessary for this Court to consider the same, the original injunction against the attaching creditors having been dissolved by order of Judge Benet, and such attaching creditors being, therefore, not now under any injunction from this Court."

From this judgment both sides appeal. Petitioner upon the grounds:

"4. That his Honor, the presiding Judge, should have held that in construing a statute due effect, if possible, must be given to every provision of the same, and that where a general provision of any clause or section of a statute seems to contradict or conflict with special provisions contained in any other clause of the provisions of the same, then, and in such case, it should be construed as having been made with a view to such special provisions.

"5. That his Honor, the presiding Judge, should have ruled that in construing the bankrupt act of 1898, effect must be given, if possible, to all of its provisions. And that especially in construing section 67, with its various subdivisions, the same should, if possible, be so construed as to give effect to all of its subdivisions, and then give effect to the section as a whole, and not give such effect to any provisions of any

one subdivision as would thereby result in making the provision of any subdivision wholly nugatory.

"6. That his Honor, the presiding Judge, should have held that the provisions of the subdivisions c and f must be construed together, so as to give effect to both, and that this result can be attained only by construing the provisions of subdivision f as containing an exception to the general language thereof in the special provisions of subdivision c. In other words, that subdivision f should be read as containing the proviso that everything therein contained should be subject to the provisions of subdivision c, which said subdivision should be read as a special exception to the provisions contained in the language of subdivision f.

"7. That his Honor, the presiding Judge, erred in holding that the language of subdivision f was imperative on him as follows: 'The language of this section, it seems, to me, is imperative. It declares all such attachments obtained against persons who are insolvent at any time within four months prior to the filing of the petition in bankruptcy against them shall be deemed null and void. I, therefore, hold, that under the language of this section, which is imperative upon this Court, the attachments in this case were obtained within four months before the adjudication of T. D. Rhodes as a bankrupt, and when he was insolvent; and that, therefore, the attachments must be set aside, and it is so ordered.' But, on the contrary, should have held that what was imperative on him was the language of the act, and that in giving effect to the provisions of the subdivision f, he should do so only with regard and consideration to the provisions of the other subdivision of section 67; and that if the force and effect he gave to the subdivision f were such as to practically strike out and render null and void the subdivision c, then, and in such case, it was his duty, if possible, to construe subdivision f so as to leave the provisions of subdivision c with proper force and effect.

"8. That the presiding Judge should have ruled that the attachments in this case were valid and subsistent attach-

ments under the provisions of subdivision c of the bankrupt act, and give the same due force and effect in connection with the provisions of subdivision f.

"9. That his Honor should have held the attachment creditors entitled to proceed under the attachments, and apply the proceeds of the property attached in the several cases to the judgmnts which they obtained therein."

The respondent offered the following : "Please take notice, that the respondent proposes to rely upon the following additional ground in order to sustain the order appealed from, viz : That the testimony shows that the attachments attacked were liens by attachments in suits at law which were begun against Rhodes within four months before the filing of the petition in bankruptcy against him, and that it appears that said liens were obtained and permitted while the defendant, Rhodes, was insolvent, and that their existence and enforcement will work a preference, and so said attachments should on this ground have been dissolved. Please take notice, that the respondent proposes to rely upon the following additional grounds, in addition to the one heretofore served upon you, on the 8th day of November, 1899, to sustain the order appealed from, viz : First. That the amendments made to the complaints herein by the order of Judge Buchanan, so far altered and amended the causes of action as to entirely destroy the original causes of action and create new ones, and the attachments as incidents to the original causes of action were abandoned and destroyed by the amendments. Second. That an attachment cannot issue when the ground of such attachment is fraud in contracting the debt for which the action is brought."

We will first pass upon the questions raised by the respondents, as they relate to certain alleged errors of the Circuit Judge, touching the validity of the attachments under the statute law of the State of South Carolina. Did the amendments to the complaints in the seventeen cases brought in the Court of Common Pleas for Florence County so far alter the causes of action as to en-

tirely destroy the original causes of action, &c. Really an attachment, under our State statutes, so far as its validity is concerned, depends upon the allegations of fact set up when the attachment is issued. No additional ground can be relied upon by the mover of the attachment than is furnished by the affidavits submitted by him when the attachment is obtained, except in the event when it is sought to set aside the attachment, affidavits are then submitted by the person assailing the attachment; in that event, the plaintiff can add to his original force of affidavits. Each complaint embodied in it the language of section *255b* of our Code of Civil Procedure. The addition of the words of the amendment to the complaint in each of the seventeen actions, did not add to nor take from the allegations of fact upon which the right of each plaintiff to an attachment of T. D. Rhodes' property was dependent. In the recent action on appeal in this Court, *Ehrhardt* v. *Breeland*, 57 S. C., 142, it was held that the allowance of an amendment to a complaint, which amendment was made after an order to seize crops under a lien for agricultural supplies had issued, did not avoid such seizure of the crops. The principle is the same in each case. This exception is overruled. We fear the respondent has attributed force to the decision of this Court in *Addison* v. *Sujette,* 50 S. C., 192, which the text of that decision does not warrant. This Court did hold that a warrant of attachment should not issue in a case for damages because of slander, for the reason that after an examination of the laws of this State regulating what causes of action would support an attachment, slander was found to be *not* one of such causes of action. We see no reason why a debt not yet due for goods, wares and menchandise sold upon an agreement as to the value thereof, and also when such money value should be paid, will not support an attachment under sections 250 and 255b of the Code of Procedure. This exception is overruled.

We now propose to consider all the other questions under this one head, viz: Did the Circuit Judge err when he vacated

the seventeen attachments of Thomas D. Rhodes' property because said attachments were invalid under subdiv. 2 f, of sec. 67, of the bankrupt act of Congress, adopted in 1898? First, it is due to the parties litigant to call attention to the facts as found by the judgment of Judge Klugh : (a) That the seventeen attachments in question were obtained without any knowledge or permission of Thomas D. Rhodes. (b) That the testimony did not satisfy him (Judge Klugh) that the seventeen attaching creditors had any reasonable cause to believe that Thomas D. Rhodes was insolvent. (c) That the seventeen attachments were not predicated upon the insolvency of Thomas D. Rhodes, but upon his attempts to conceal and dispose of his property. (d) That the testimony failed to show that said seventeen attaching creditors had reason to believe that Thomas D. Rhodes contemplated bankruptcy.

These attachments now sought to be set aside were issued in law actions in the Courts of South Carolina, and not in equity actions in said State. These actions being on the law side of the Court of Common Pleas for Florence County, this Court has no power, under the Constitution of this State, to pass upon any appeals herein based upon supposed errors of the Circuit Judge in any of his findings of fact. Questions of law are presented by both parties litigant in this Court as to subdivisions c and f, of the 67th section of the United States Bankrupt Act, passed in the year 1898. We should always remember that under sec. 3, of art. I., of the Constitution of the United States, Congress is vested with full power to establish uniform laws on the subject of bankruptcy throughout the United States. Congress having passed an act on the subject of bankruptcy, all laws of each State of this Union of States on this subject, or in any manner trenching upon the subject matter of bankruptcy, must be regarded as repealed as if specifically named in an act repealing such State laws. This idea is necessary in the judicial mind as the preliminary to any investigation of matters relating to the national bankrupt act. Whenever, however,

this bankrupt law comes before any Court, it must be construed as is any other law. This Court is bound to yield, in its construction of such bankrupt law to no other Court than the United States Supreme Court, whose deliverances bind all Courts in the United States in regard to *federal questions.* The true construction of these subdivisions c and f, of section 67 of the bankrupt act, present federal questions.

With these few preliminary observations, let us now regard the text of these two subdivisions. Appellants by parallel columns thus present these subdivisions:

*Subdivision c.*

"A lien created by or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon mesne process or a judgment by confession, which was begun against a person within four months before the filing of a petition in bankruptcy by or against such person, shall be dissolved by the adjudication of such person to be a bankrupt, if (1) it appears that said lien was obtained and permitted while the defendant was insolvent, and that its existence and enforcement will work a preference; or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of

*Subdivision f.*

"That all levies, judgments, attachments or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the Court shall, on due notice, order that the right under such levy, judgment, attachment or other lien shall be preserved for the benefit of the estate; and thereupon the same may

bankruptcy; or (3) that said lien was sought and permitted in fraud of the provisions of this act; or if the dissolution of such lien would militate against the best interests of the estate of such person, the same shall not be dissolved, but the trustee of the estate of such person, for the benefit of the estate, shall be subrogated to the rights of the holder of such lien, and empowered to perfect and enforce the same in his name as trustee, with the same force and effect as such holder might have done had not bankruptcy proceedings intervened."

pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the Court may order such conveyance as shall be necessary to carry the purposes of this section into effect: *Provided,* That nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment or other lien, of a *bona fide* purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

Under subdivision f, as has been adjudged by the Circuit Judge, the language is imperative,. "That all * * * attachments * * * obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void, in case he is adjudged a bankrupt * * *" And the Circuit Judge held under f that the attachments were void, as before stated. Now, to so hold, it was essential that the Circuit Judge should have found as facts: (1) That these attachments were obtained through legal proceedings. (2) That Thomas R. Rhodes, against whom the attachments were issued, was an insolvent during the four months next preceding the 2d November, 1898, at which date the petition to have said Thomas B. Rhodes adjudicated a bankrupt was filed. (3) That said Thomas D. Rhodes has been adjudicated a bankrupt by the District

Court of the United States for the District of South Caro-
lina. (4) That said Robert C. Chase has been elected the
trustee of the estate of the said Thomas R. Rhodes, a bank-
rupt. (5) That he has been clothed with power, if he
needed such authorization, to intervene in these actions to
vacate these seventeen attachments. Certainly these facts
fully sustain the Circuit Judge under subdivision f, unless
such subdivision is not law. The only objection to its being
considered sound law is that it comes in conflict with the
provisions of subdivision c. What are the provisions of
subdivision c? A lien by attachment issued in a suit, in law
or in equity, shall be dissolved by the adjudication of a
person as a bankrupt, if such attachment has been obtained
within the four months next preceding such adjudication
in bankruptcy, if it appears (1) that said attachment
was obtained and permitted while the defendant (bank-
rupt) was insolvent, and that the existence and enforce-
ment of such attachment will work a preference; (2) that
the parties (the seventeen attaching creditors) to be bene-
fited thereby had reasonable cause to believe the defendant
(bankrupt) was insolvent and in contemplation of bank-
ruptcy; (3) that such attachments were sought and per-
mitted in fraud of the provisions of this act. It is
patent that the provisions of subdivision f are much more
general than those of subdivision c, and that the provi-
sions of the former, from the words there used, contem-
plate bankruptcy proceeding *against a debtor,* while those of
the latter contemplate both *voluntary* as well as *involuntary*
proceedings against a debtor in the bankrupt court. The
findings of the Circuit Judge do not reach the point, under
his treatment of subdivision c, that Thomas D. Rhodes was
not insolvent during the four months preceding his adjudi-
cation as a bankrupt. It is noticeable that both subdivisions
c and f speak of the *fact* of insolvency, not what people
*thought* of such insolvency. But the case not considered
and provided for in subdivision f, and which is considered
and provided for in subdivision c, is (2) The party or

24—62

parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of insolvency. This is only one division of the subdivision, and inasmuch as the judgment of Judge Klugh was obliged to be based upon his finding of the fact of the insolvency of T. D. Rhodes, bankrupt, within four months preceding his adjudication of bankruptcy, which is one (1) of the cases provided for in subdivisions c and f, in common, we cannot see how this incompatibility of the two subdivisions occurs in the case at bar. That the disjunctive "or" is intended to present separate grounds for declaring the attachments void, must be apparent from the fact that class 3, under subdivision c, provides that such attachments shall be vacated, "if said lien was sought in fraud of the provisions of this act," while it does seem that *class (2)* under subdiv. c, of sec. 67, of the bankrupt act of 1898, might be considered as an instance where an incompatibility exists when construed along with subdivision f of the same section; yet, as the provisions of both subdivisions c and f contemplate the fact of insolvency of the bankrupt within the four months preceding his adjudication as a cause for setting aside attachments taken within said four months, we cannot hold section f as unsound in law. Having reached this conclusion, it necessarily includes the declaring all the exceptions of the appellants as untenable.

Having reached the conclusions hereinabove announced, I found that Chief Justice McIver, who was supported in his view by Mr. Justice Eugene B. Gary and Mr. Justice Jones, took an opposite view of one of the points involved in this decision. This being so, the very great respect I entertain for the views of my brethren caused me to look more carefully into the matters in controversy, and while still entertaining some doubts, I feel that I should concur in the judgment which the said Justices have recommended—thus making the judgment of reversal by this Court unanimous.

It is, therefore, the judgment of this Court, that the judg-

ment of the Circuit Court be reversed and the action be re-
manded.

MESSRS. JUSTICES GARY AND JONES *dissent, and concur in
the dissenting opinion of* MR. CHIEF JUSTICE MCIVER.

MR. CHIEF JUSTICE MCIVER, *dissenting.* While I agree
with Mr. Justice Pope in the conclusions which he has
reached on all the questions except the last, which are
presented by this appeal and considered in the lead-
ing opinion, I am unable to agree with him in the
view which he takes of this last question, and, therefore, will
proceed to state briefly the grounds of my dissent.

That question, practically, is this: whether the attach-
ments obtained by the appellants and levied upon the prop-
erty of Thos. D. Rhodes, the bankrupt, prior to the institu-
tion of the proceedings in bankruptcy, are rendered
void by subdiv. f, of sec. 67, of the bankrupt act
passed by the Congress of the United States in July,
1898. It seems to me that the view which has been taken
of subdiv. f, of sec. 67, of the bankrupt act, not only ignores,
but completely eradicates from the statute subdivision c of
the same section of the same act. While this may be pos-
sible in some cases, yet I know of no rule of construction by
which it is permissible except where such a result is abso-
lutely unavoidable. On the contrary, the well settled rule is
that where two portions of a statute appear on their face to
be conflicting, every effort should be made to reconcile these
apparently conflicting provisions, and bring them into har-
mony if possible. This rule is, if anything, the more im-
perative where, as in this case, the apparent conflict is be-
tween two clauses of the same section of the same act. That
there is an apparent conflict between the provisions of sub-
division c and subdivision f, is evident from a bare reading
of the two subdivisions, both relating to the same general
subject matter, viz: as to what liens on the estate of the bank-
rupt are rendered void by an adjudication of bankruptcy. It

is not necessary to set out here the provisions of these two subdivision *in haec verba,* as they are set out fully in the leading opinion. It is enough to say that by the provisions of subdivision f, the lien of every attachment, "obtained, through legal proceedings, against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is·adjudged a bankrupt * * * unless the Court shall, on due notice, order that the rights under such * * * attachment * * * shall be preserved for the benefit of the estate;" while under subdivision c, the provisions are that the lien of an attachment obtained in any proceeding at law or in equity,·"which was begun against a person within four months before the filing of a petition in bankruptcy by or against such person, shall be dissolved by the adjudication of such person to be a bankrupt:" *Provided,* Any one of three things shall be made to appear: (1) "That said lien was obtained and permitted ·while the defendant was insolvent, and that its existence will work a preference;" (2) "the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy;" or (3) "that said lien was sought and permitted in fraud of the provisions of this act." In other words, under the one provision—subdivision f—any attachment obtained in a legal proceeding, within four months before the filing of a petition in bankruptcy, against a person who is insolvent (without regard to the fact as to whether the holder of the lien either knew or had cause to believe such person was insolvent), shall be dissolved in case the defendant is adjudged a bankrupt; while under the other provisions—subdivision c—the adjudication of bankruptcy will not work a dissolution of the attachments, unless (1) the lien of such attachment "was obtained and permitted while the defendant was insolvent, and that its existence and enforcement will work a preference;" or (2) "the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bank-

ruptcy;" or (3) "that said lien was sought and permitted in fraud of the provisions of this act."

The next inquiry is whether this apparent conflict between these two provisions can be reconciled; for if so, the well settled rule is that it must be done, before resort can be had to the extreme rule whereby the last provision shall be regarded as the latest declaration of the legislative will, and practically operating as a repeal or abrogation of the preceding provision. It seems to me that this apparent conflict between these two provisions of the bankrupt act—subdivision c and subdivision f—can and should be reconciled by reading the particular or special provision contained in subdivision c, as an exception to the general provisions in subdivision f, under the well settled rule which is thus stated in Endlick on Stat., sec. 216: "Where a general intention is expressed, and also a particular intention which is incompatible with the general one, the particular intention shall be considered an exception to the general one" (citing several cases, amongst which is *Churchill* v. *Crease,* 5 Bing., 180, which seems to be a leading case on the subject), and the author proceeds, in the same section, to illustrate the rule as follows: "Hence, if there are two acts, or two provisions in the same act, of which one is special and particular, and clearly includes the matter in controversy, whilst the other is general, and would, if standing alone, include it also; and if, reading the general provisions side by side with the particular one, the inclusion of that matter in the former would produce a conflict between it and the special provision, it must be taken that the latter was designed as an exception to the general provision." To the same effect, see Potter's Dwarris on Stat., at pp. 272-3, and 23 Ency. of Law, 428, where it is said that the rule applies without regard to priority of enactment of the two provisions. See, also, *Townsend* v. *Little,* 109 U. S. Rep., 504, where the rule is said to be well settled and is thus stated: "That general and specific provisions in apparent contradiction, whether in the same or different statutes, and without regard to priority of enactment, may subsist to-

gether, the specific qualifying and supplying exceptions to the general." This rule has also been expressly recognized by this Court in the case of the *State* v. *Shaw,* 9 S. C., 94. It seems to me, therefore, that the Circuit Judge was in error in basing his conclusion that the attachments should be set aside solely on the provisions of subdivision f of sec. 67, of the bankrupt act, without regard to the qualifying effect of the provisions of subdivision c, of the same section.

I think that the judgment of the Circuit Court should be reversed.