## PORTLAND CATTLE LOAN CO. v. OREGON SHORT LINE R. CO.

(Circuit Court of Appeals, Ninth Circuit.    May 6, 1918.)

No. 3103.

1. CARRIERS ⬡⇒30—RATES—SCHEDULES FILED.
    The rate filed, whatever it is, is the only lawful charge, and the carrier must collect the same.

2. CARRIERS ⬡⇒30—RATES—PUBLISHED TARIFFS.
    In an action by a railroad company to recover balances due as freight for shipments of cattle, published tariffs *held* to require that a differential rate from the point of shipment to a central point should be collected.

3. CARRIERS ⬡⇒30—RATES—TARIFFS.
    In determining the rate to be charged by a carrier, all parts of the tariff filed should be considered, and if a plain meaning can be gathered therefrom, effect should be given to it.

In Error to the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Action by the Oregon Short Line Railroad Company, a corporation, against the Portland Cattle Loan Company. There was a judgment for plaintiff (245 Fed. 214), and defendant brings error. Affirmed.

Writ of error is brought to review a judgment whereby the railroad company recovered a balance of freight charges alleged to be due it by the cattle company for the transportation of a trainload of cattle from Hereford, Tex., to destinations in Idaho and Montana. Hereford is a station on the Pecos & Northern Texas Railway and a short distance from Amarillo. The shipment moved through Amarillo over the connecting lines of the defendant railroad to Pocatello, Idaho. Originally 44 carloads of cattle were shipped, but at Amarillo the 44 carloads were combined into 43. Twenty-seven carloads were delivered by the railroad company at Pocatello, Idaho, and 16 were delivered at a station near Butte, Mont. Payment of freight charges was made by the cattle company for deliveries at Pocatello at a rate of $136.50 per car. This was made up of $116.50 for transportation from Hereford, Tex., to Idaho Falls, Idaho, and $20 for back haul from Idaho Falls to Pocatello. The charges for the part of the shipment delivered near Butte were on the basis of $164.80 per car, or $116.50 from point of origin to Idaho Falls, Idaho, and an added charge of $48.30 from Idaho Falls to Butte. Later the railroad company acknowledged that these were in part erroneous charges, and refunded to the cattle company $20 and interest per car on the Pocatello cars. In the course of time, after examination by the auditor of the railroad company, it was as-

---

⬡⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

serted that the published tariffs applicable to the movement of the cars to Pocatello provided for a charge of $142.90 per car, and that therefore there had been a total undercharge on each of the cars of $26.40 for that point, and that on the 16 cars moving from Hereford to Butte the tariff called for $171.20 per car, which left an undercharge on the 16 cars for Butte of $6.40 per car. The $171.20 was made up of a combination of $26.40 from Hereford to Amarillo, plus the rate of $125 applying to Dillon, Mont., plus the rate from Dillon to Butte of $19.80.

Carey & Kerr and Charles A. Hart, all of Portland, Or., for plaintiff in error.

George H. Smith, of Salt Lake City, and A. C. Spencer and W. A. Robbins, both of Portland, Or., for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] The rate filed, whatever it is, is the only lawful charge, for, as has been said by the Supreme Court in L. & N. R. R. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665:

"Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict, and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination."

[2, 3] The learned judge of the District Court confined his consideration largely to the specific question whether the charge of $26.40 from Hereford to Amarillo was correct, and, inasmuch as it is conceded that the solution of the case turns upon that point, we confine ourselves to its consideration.

In the indices of the joint live stock tariffs Hereford is given as a point of origin, and Idaho Falls as a point of destination. In section 1 of the tariff, the list of bases from points of origin for rates on range cattle, there is a grouping of Texas stations, with a rate basis given for each station. Amarillo is given as a rate base point, and the other stations named take either the Amarillo rate or there is differential over or under the Amarillo rate. Hereford is listed as a station which apparently takes the Amarillo rate with no given differential. Page 26 of the Tariff. At a subsequent place in the tariffs the rate from Amarillo and from stations taking the Amarillo rate without a differential in ten car lots or more to Idaho Falls is $116.50 per car. Going back to the printed matter upon the first of the pages which precede the list of stations where the rates appear as based on the Amarillo rate, there is a caption, section No. 1, over a note in the tariff, which reads:

"Section No. 1, Item 200—Governing Use of Differentials Shown in Section No. 1, Pages 24–31, Inclusive.

"The differentials shown in section No. 1 are to be added to or deducted from the Amarillo, El Paso or Deming rates as shown in section No. 2 hereof, pages 32 to 51, inclusive, to arrive at the through rate, where application and routing is provided on pages 56 to 69.

"Where no differentials are shown, the Amarillo or El Paso-Deming rates as shown in section No. 2 are to be applied *as indicated*." (Italics ours.)

The contention of the cattle company is that this explanatory note "prescribes a limitation on the use of the Amarillo rates as basic rates

in certain instances, that is, where a station does not take the Amarillo rate, but there is a differential, an arbitrary addition to or subtraction from the Amarillo rate, the rate can thus be made upon only where application and routing is provided on pages 56 to 69 of the tariff"; and it also said that, where there is no differential, the Amarillo rate is to be applied, with no condition imposed that the use of the Amarillo rate is conditioned upon the existence of application and routing, as provided elsewhere in the tariff.

A full understanding of the tariffs can only be had, however, by following the direction indicated in item 200, supra, and referring to pages 56 to 69 of the tariffs themselves. On page 56, under the caption "Application of Rates," we find this note:

"Rates provided herein from points of origin shown in section 1 to points of destination shown in section 2 will apply only via the routes indicated in the chart on page 57, except as provided in item 350, note 1, where route number is not shown, there are no through rates applicable from the originating line to the destination line via any route except as specifically provided in section No. 3."

Section 3 being immaterial, it becomes necessary to refer to the route and application chart shown on page 57 of the tariffs to ascertain whether there are any applicable through rates from points on the Pecos & Northern Railway to points on the Oregon Short Line. Page 57 has the caption "Routing and Application," and on line 12 appears "Pecos, Nor. Tex. Ry.," and in the list of routes the Oregon Short Line Railroad appears at the head of a column, but without any routing number being inserted. We therefore have an instance which is precisely within note 1, page 56, of the tariff just heretofore quoted; that is, as no route number is shown, there are no through rates applicable from the Pecos & Northern Texas Railway, the originating line, to the Oregon Short Line points on the destination line. It would therefore follow that, no through rate or through route being authorized by the tariff, the rate which would be applicable would have to be made up by a combination of the rates published in the tariff sheets. Pocatello is not named as a point of destination; hence it is necessary to make an intermediate application of the Idaho Falls rate as under certain items of the tariff which need not be specially cited. Hereford is 47 miles from Amarillo, and, as provided by the tariff sheets, when the exact destination is not shown, the next greater destination is to be used. The next greater destination mentioned in the tariff being 50 miles, the rate specified on cattle in carload lots would make the local rate $26.40 from Hereford to Amarillo.

There is no ambiguity in the language itself. Whatever difficulty arises is in relating one feature or note in the tariff with another. They must all be considered, and if a plain meaning can be gathered, of course it will control. We think the judge of the District Court applied this doctrine by regarding the later explanatory notes (pages 56–59) as but a "development of the intention" of the rate maker that shipments from Amarillo common points, whether with or without differentials, would not take the through rates unless application and routing are provided for on pages 56 to 69. Our judgment

agrees with his final view that, there being no through rates or through' routes from points on the Pecos & Northern Texas Railway to Oregon Short Line points, the notes (quoted above) on page 56 apply in their limitations of the applicability of the rates from points in section 1 to destination points in section 2 to the routes indicated on page 57.

Affirmed.