## PILLSBURY FLOUR MILLS CO. v. GREAT NORTHERN RY. CO.

Circuit Court of Appeals, Eighth Circuit.
March 12, 1928.

No. 7605.

1. Carriers ⬅➡30—Shipper's rights against carrier are determined through provisions of tariff embodied in applicable published rate.

The rights of the shipper against the carrier are determined by law through the provisions of the tariff which are embodied in the applicable published rate.

2. Carriers ⬅➡30—On interstate shipments, carrier must collect and shipper pay full charge named in tariffs filed by carrier with Interstate Commerce Commission.

Where the shipment is interstate, the carrier is required to collect and the shipper to pay the full charge named in tariffs filed by the carrier with the Interstate Commerce Commission.

3. Carriers ⬅➡30—Tariff filed by railroad is to be treated as though it were a statute, binding on both railroad and shipper.

The tariff filed by carrier with the Interstate Commerce Commission, so long as it is of force, is, in respect of rates named, to be treated as though it were a statute, binding as such on railroad and shipper alike.

4. Carriers ⬅➡30—Construction of railroad tariff is not matter sui generis, but ordinarily presents question similar to those presented when construction of any other document is in dispute.

While there may be some rules of construction peculiarly applicable to a railroad tariff, its construction is not a matter sui generis, but presents ordinarily a question of law, which does not differ in character from those presented when the construction of any other document is in dispute.

5. Carriers ⬅➡30—Contracts ⬅➡156—Statutes ⬅➡194—General and specific provisions of statute in apparent contradiction may subsist together, the specific qualifying the general, which rule applies to contracts and railroad tariffs.

It is an elementary rule of statutory construction that general and specific provisions in apparent contradiction may subsist together, the specific qualifying and supplying exceptions

to the general, and this rule applies to contracts, and has frequently been applied by the Interstate Commerce Commission in construing railroad tariffs.

**6. Contracts ☞152—Statutes ☞206—Effect should be given, if possible, to every word, clause, and sentence of a contract or statute.**

In construction of statutes and of contracts, effect is to be given, if possible, to every word, clause, and sentence.

**7. Carriers ☞30—In determining meaning of part of railroad tariff, resort may be had to other parts, in order that whole may stand.**

The rule that, in determining the meaning of a part of a document, resort may be had to other parts, in order that the whole may stand, is recognized in the construction of railroad tariffs.

**8. Carriers ☞30—Shipment coming within two designations in published tariffs held subject to rate of most specific designation, where certain specific commodities were segregated and given specified rates of their own.**

Where published tariffs of carrier contained designations, "bran, other than flax," and "feed, mill," and interstate shipment was included within both designations, *held*, that, applying the rules of statutory construction, the rate applicable was that named for "bran, other than flax," which was the most specific, where it clearly appeared that tariff was compiled on theory of segregating certain specific commodities and giving them specified rates of their own.

In Error to the District Court of the United States for the District of Minnesota; Joseph W. Molyneaux, Judge.

Action by the Great Northern Railway Company against the Pillsbury Flour Mills Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Clark Hempstead, of Minneapolis, Minn., for plaintiff in error.

R. J. Hagman, of St. Paul, Minn. (J. B. Faegre, of Minneapolis, Minn., on the brief), for defendant in error.

Before KENYON and BOOTH, Circuit Judges, and MUNGER, District Judge.

BOOTH, Circuit Judge. This is a writ of error to a judgment obtained by defendant in error, hereafter called plaintiff, in an action brought by it against plaintiff in error to recover a balance of freight charges claimed to be due and unpaid on certain shipments of freight from Minneapolis, Minnesota, to various points in Montana. Jurisdiction exists under section 24 (8), Judicial Code (USCA tit. 28, § 41 [8]). The action was tried to the court without a jury, stipulation waiving a jury having been signed and filed. Facts were stipulated, among them the following:

"That defendant, on the various dates indicated in the first column of Exhibit A attached to the complaint herein, delivered to plaintiff at Minneapolis, Minnesota, for transportation to the various stations in Montana indicated on said exhibit in the column headed 'Destination,' eight carloads of bran; that plaintiff accepted said shipments and duly transported them over its lines of railway to the said destinations, and delivered them on the dates indicated on said exhibit in accordance with the provisions of the bills of lading executed by plaintiff and defendant covering said shipments; and that the dates on which the bills of lading were executed, the names of the consignor and consignee, and the weights of the shipments are as shown in said exhibit."

"That prior to the acceptance and transportation by plaintiff of said shipments plaintiff filed with the Interstate Commerce Commission, printed and kept open to public inspection and posted in the manner required by law, a tariff or schedule known as Countiss' I. C. C. No. 1086, and various supplements thereto, which tariff and supplements named the lawful rate for the transportation of said shipments referred to in Exhibit A attached to the complaint, and that one of said supplements (special supplement effective March 6, 1922) is hereto attached, marked 'Exhibit 1' and made a part hereof; that said special supplement named 'Exhibit 1' was the tariff in effect during the time the shipments mentioned in said complaint were made."

"That if the court shall determine that the said shipments should be charged for at the rate on 'Bran, except flax bran,' or in any of the other articles contained in 'List No. 2' on page 3 of the special supplement attached hereto as Exhibit 1, the lawful charges for the transportation of said shipments amounted to two thousand eight hundred seventy-four and 40/100 ($2,874.40) dollars, and defendant is indebted to plaintiff in the sum of two hundred seventy-eight and 5/100 ($278.05) dollars, together with interest thereon from July 10, 1922, and plaintiff is entitled to judgment for the said amount, together with its costs and disbursements herein."

"That if the court shall determine that the said shipments should be charged for at the rate on 'Feed (manufactured from grain or flax straw)' or 'Feed, mill,' or on any of the other articles contained in 'List No. 3' shown on page 3 of said special supplement attached hereto as Exhibit 1, the lawful charges for the transportation of said ship-

ments amounted to two thousand five hundred ninety-six and 35/100 ($2,596.35) dollars, which charges have been fully paid, and defendant is entitled to judgment dismissing the complaint herein and for its costs and disbursements."

"That the said shipments consisted of bran, which said bran was not manufactured from flax, and the said bran was a feed manufactured from grain and was a mill feed."

" * * * The term 'mill feed' includes the following commodities: Bran, middlings, chops, and shorts."

The special supplement designated as Exhibit 1, being the tariff in force at the time of the shipments, contained several lists of commodities. Included in List No. 2 was "Bran, except flax bran." Included in List No. 3 were "Feed, mill," and "Feed (manufactured from grain or flax straw)." By the stipulation of facts, if the rate on "Bran, except flax bran," as shown in the table of rates, was applicable to the shipments by defendants, then plaintiff was entitled to recover the amount claimed; but if the rate on "Feed (manufactured from grain or flax straw)," or on "Feed, mill," shown in the table of rates, was applicable, then plaintiff was entitled to no recovery. The court held that the commodity shipped was included in more than one tariff designation, but that the designation "Bran, except flax bran," was the most specific, and therefore that the rate applicable to the commodity shipped was that named for "Bran, except flax bran." Judgment accordingly went for plaintiff.

The sole question before this court is whether the court erred in reaching this conclusion. In determining the question, it may be helpful to bear in mind some of the general principles of law relating to railroad tariffs on interstate shipments:

[1] The rights of the shipper against the carrier are determined by law through the provisions of the tariff which are embodied in the applicable published rate. B. & O. S. W. R. Co. v. Settle, 260 U. S. 166, 170, 43 S. Ct. 28, 67 L. Ed. 189.

[2] The shipment being interstate, the carrier is required to collect and the shipper to pay the full charge named in the tariffs filed by the carrier with the Interstate Commerce Commission. Pittsburg, C. C. & St. L. Ry. Co. v. Fink, 250 U. S. 577, 581, 40 S. Ct. 27, 63 L. Ed. 1151; N. Y. C. R. Co. v. York, etc., Co., 256 U. S. 406, 408, 41 S. Ct. 509, 65 L. Ed. 1016.

[3] The tariff, so long as it is of force, is, in respect of rates named, to be treated as though it were a statute, binding as such upon railroad and shipper alike. Penn. R. Co. v. International Coal Co., 230 U. S. 184, 197, 33 S. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315; Robinson v. B. & O. R. Co., 222 U. S. 506, 509, 35 S. Ct. 491, 56 L. Ed. 288; Gimbel Bros. Inc. v. Barrett (D. C.) 215 F. 1004, 1006; Moore v. Duncan (C. C. A.) 237 F. 780; North American Co. v. St. L. & S. F. R. Co. (D. C.) 288 F. 612, 617.

[4] Furthermore, the construction of a railroad tariff is not a matter sui generis. It "presents ordinarily a question of law, which does not differ in character from those presented when the construction of any other document is in dispute." Great Northern Ry. v. Merchants' Elevator Co., 259 U. S. 285, 291, 42 S. Ct. 477, 479 (66 L. Ed. 943). While there may be some rules of construction peculiarly applicable to a railroad tariff, yet ordinarily the rules governing the construction of other documents have been applied by the courts to such tariffs. Cudahy Packing Co. v. Grand Trunk W. Ry. Co. (C. C. A.) 215 F. 93; National Elevator Co. v. C., M. & St. P. Ry., 246 F. 588 (C. C. A. 8); Portland Cattle Loan Co. v. Oregon Short Line R. Co. (C. C. A.) 251 F. 33; James v. Davis, Director General, 280 F. 780 (C. C. A. 8); Reliance Elevator Co. v. C., M. & St. P. Ry., 139 Minn. 69, 165 N. W. 867.

In the Portland Cattle Case the court said: "There is no ambiguity in the language itself. Whatever difficulty arises is in relating one feature or note in the tariff with another. They must all be considered, and, if a plain meaning can be gathered, of course it will control."

In the Cudahy Packing Company Case the court in its opinion said: "But, while the Commerce Act and all tariffs and doings of carriers should be strictly construed and enforced to accomplish the large purposes of fairness and uniformity, we are of opinion that the general principle in relation to statutes, wills, contracts, etc., that the illegal parts will be excised and the legal preserved unless the bad is so interwoven with the good that extrication is impossible, should be applied to the facts of this case."

Whether the tariff, being statutory in character, is to be treated as subject to the rules for the construction of statutes, or, being contractual in character, is to be treated as subject to the rules for the construction of contracts, we need not determine; for so far as the case at bar is concerned, the rules which are common both to the construction of statutes and contracts are applicable.

[5] It is an elementary rule of statutory con-

struction that general and specific provisions in apparent contradiction may subsist together—the specific qualifying and supplying exceptions to the general. Sutherland on Statutory Construction (2d Ed.) § 348; Townsend v. Little, 109 U. S. 504, 512, 3 S. Ct. 357, 27 L. Ed. 1012; Kepner v. United States, 195 U. S. 100, 125, 24 S. Ct. 797, 49 L. Ed. 114, 1 Ann. Cas. 655; Anchor Oil Co. v. Gray, 257 F. 277, 283 (C. C. A. 8). This same rule of construction applies to contracts. In 13 C. J. 538, § 501, the statement is made: "Where, however, both the general and special provision may be given reasonable effect, both are to be retained."

This same general rule has frequently been applied by the Interstate Commerce Commission in construing railroad tariffs. Augusta Veneer Co. v. Southern Ry., 41 I. C. C. 414; Boardman Co. v. A., T. & S. F. Ry. Co., 46 I. C. C. 352; N. W. Gas Equipment Co. v. O.-W. R. R. & N. Co., 46 I. C. C. 354; Cornell Wood Products Co. v. A., T. & S. F. Ry. Co., 49 I. C. C. 91; U. S. Industrial Alcohol Co. v. Director General, Illinois Central R. Co., 68 I. C. C. 389.

[6] Another cardinal rule in the construction of statutes is that effect is to be given, if possible, to every word, clause, and sentence. 36 Cyc. 1128; United States v. Ninety-Nine Diamonds, 139 F. 961, 2 L. R. A. (N. S.) 185 (C. C. A. 8); United States ex rel. Harris v. Daniels (C. C. A.) 279 F. 844; Hellmich v. Hellman, 18 F.(2d) 239 (C. C. A. 8). The same rule of construction applies to contracts. 13 C. J. 527; Canadian Northern Ry. Co. v. Northern Miss. Ry. Co., 209 F. 758, 761, 762 (C. C. A. 8); Rushing v. Manhattan Life Ins. Co., 224 F. 74 (C. C. A. 8); Harper v. Hochstim (C. C. A.) 278 F. 102, 20 A. L. R. 1232.

[7] And the corollary that in determining the meaning of part of a document resort may be had to other parts in order that the whole may stand, is recognized in the construction of railroad tariffs. Penn. R. Co. v. Kittaning Co., 253 U. S. 319, 323, 40 S. Ct. 532, 64 L. Ed. 928; United Shoe Machinery Corp. v. Director General & Pennsylvania R. Co., 55 I. C. C. 253.

[8] Let us apply the foregoing principles and rules to the facts in the case at bar. The shipments consisted of "bran, other than flax." This bran was also a mill feed. But the term "mill feed" included other commodities beside bran. "Bran" was the specific designation; "Feed, mill," the general designation. Both designations and both rates may stand, if we apply the first rule above stated and consider the specific commodity

"bran" as being excepted from the general class "Feed, mill."

Application of the second rule of construction above mentioned leads to the same result, for it is only by considering "bran" as a commodity excepted from the general class of commodities "Feed, mill," that any effect whatever can be given to the designation "bran" and its accompanying rate.

Further, it is to be noted that the tariff in evidence affords other instances of a particular commodity being excluded or excepted from a general class designation, e. g., in List No. 2 is found the designation "Grits, wheat"; while in List No. 3 is the general class designation "Grits." Other examples might be given. All such instances show clearly the theory and purpose of the compilers of the tariff, and indicate conclusively to our minds that the tariff was compiled in this fashion in view of, and in order to meet, the rules of construction which we have given above.

Plaintiff in error states its contention thus: "Said decisions [of the Interstate Commerce Commission] clearly establish that in case a shipment is covered by more than one tariff designation, the shipper is entitled to have applied the one specifying the lower rate, and also establish that, if a shipment is covered by more than one tariff designation, one of which is more specific, said tariff designations are equally appropriate, and the shipper is entitled to the lower rate."

We have examined the cases cited in which such rule, it is claimed, has been established and applied. We are of opinion, however, that no such broad general rule can be deduced, but that an accurate statement of the rule is given in the case of United States v. Gulf Refining Co., cited below. We think, also, that the rule so stated (the second one, page 546 [45 S. Ct. 599]) does not apply to a case like the one at bar, in which it clearly appears that the tariff was compiled on the theory of segregating certain specific commodities from a general class which was broad enough to include them, and of giving those segregated commodities specified rates of their own, and in which it further clearly appears that if the alleged rule contended for by plaintiff in error should be applied, then the portions of the tariff specifying the particular commodities with their rates, would have no application whatever. We think the rule under discussion is not to be construed and applied in flat contradiction of other well recognized rules of construction, but rather in harmony with them.

The conclusion reached by the trial court

as, in our opinion, in accordance with the recognized rules for the construction of statutes, contracts, and other documents, and is correct.

The conclusion thus reached as to the rate properly applicable, based upon the general rules for the construction of documents, is moreover directly supported by the decision of the Supreme Court in the case of United States v. Gulf Refining Co., 268 U. S. 542, 45 S. Ct. 597, 69 L. Ed. 1082. This case was a prosecution for receiving concessions and discriminations in rates in violation of the Elkins Act (32 St. 847, c. 708) as amended by the Act of June 29, 1906 (34 St. 584, c. 3591, § 2 [49 USCA § 41; Comp. St. § 8597]). The specific charge was that the Gulf Refining Company had made shipments of gasoline, unlawfully designating them as shipments of unrefined naphtha, thereby securing a lower rate. Conviction was had in the trial court. The judgment was reversed in this court, on the ground that the verdict was without support in the evidence. 284 F. 90, 102. The Supreme Court affirmed this ruling.

The vital question in the case was whether the defendant had received any concessions or discriminations in rates. This question was dependent upon the further question what rate defendant was entitled to have on the product shipped, and this question was in turn dependent upon the question what the product really was which was shipped. The evidence showed that prior to December 2, 1916, the same product had been shipped by defendant under the designation "gasoline"; that on the date mentioned a new tariff took effect, which included "unrefined naphtha" at specified rates lower than the rates on gasoline. The challenged shipments were made under the new designation and paid the new lower rates. The jury had by its verdict necessarily found that the product shipped was gasoline and not unrefined naphtha. This court reversed the judgment, on the ground that there was no substantial evidence to sustain a finding that the product shipped was not unrefined naphtha. On certiorari the Supreme Court was confronted with the question whether there was any substantial evidence that the product shipped was not unrefined naphtha.

Before taking up the discussion of that question, it laid down two postulates, viz.: "Where a commodity shipped is included in more than one tariff designation, that which is more specific will be held applicable. U. S. Industrial Alcohol v. Director General, 68 I. C. C. 389, 392; Augusta Veneer Co. v. Southern Ry. Co., 41 I. C. C. 414, 416. And where two descriptions and tariffs are equally appropriate, the shipper is entitled to have applied the one specifying the lower rates. Ohio Foundry Co. v. P., C., C. & St. L. Ry. Co., 19 I. C. C. 65, 67; United Verde Copper Co. v. Pennsylvania Co., 48 I. C. C. 663" and then said: "It follows that, if the property in question properly might have been described either as gasoline or as unrefined naphtha, the lower rate was lawfully applied, and defendant was not guilty. And the burden was on the United States to prove beyond a reasonable doubt that the property so shipped was gasoline and was not unrefined naphtha."

The conclusion reached was that there was no substantial evidence to sustain a finding that the product shipped was not unrefined naphtha. Accordingly, under either postulate, the defendant was entitled to the rate which it had paid, and therefore was not guilty of receiving any concessions or discriminations.

It is claimed by plaintiff in error that the first postulate was pure dictum. We do not think that either postulate can properly be considered dictum. The line of reasoning of the Supreme Court opinion is this: That the evidence showed that the product shipped had, prior to December 2, 1916, been designated along with other products under the term "gasoline"; but on that date certain products, including the one shipped, had been taken out from the general designation "gasoline" and placed under the more specific designation "unrefined naphtha." Therefore the first postulate applied. The line of reasoning proceeds: That, even granting that the designation "gasoline" was still equally appropriate, then the second postulate applied. That the Supreme Court considered the first postulate as having a direct bearing upon the case is conclusively shown by the following language used in the opinion:

"But the evidence * * * shows that the purpose of the carrier was to put in a tariff covering the unfinished product referred to in the negotiations as crude unfinished naphtha, crude naphtha, unrefined naphtha and unfinished naphtha. * * * The thing shipped was not ordinary gasoline, and it was lawful to distinguish it by tariff designation and to make the specified rate applicable. The words employed describe the product with sufficient accuracy."

But it is contended that the first of the two postulates laid down by the Supreme Court is not supported by the citations made.

We do not think this contention merits serious consideration. A statement by the Supreme Court of the principles of law which must govern the construction of railroad tariffs does not need citation of authorities. To avoid misapprehension, however, it may be stated that in our opinion the rule announced not only is supported by the citations made from the Interstate Commerce Reports, but also by other decisions of that tribunal, which we have heretofore cited. Not only so, but the principle enunciated is a broad one, and finds application generally in the construction of statutes and contracts, as we have heretofore pointed out.

The trial court committed no error in entering judgment for the plaintiff, and the judgment is affirmed.