## STANDARD OIL CO. v. PENNSYLVANIA R. CO.

### No. 4162.

Circuit Court of Appeals, Seventh Circuit.
April 11, 1930.

Rehearing Denied May 29, 1930.

John R. Cochran, of Chicago, Ill., for appellant.

J. L. Aber, of Pittsburgh, Pa., for appellee.

Before ALSCHULER, PAGE, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above).

It is conceded that the I. T. R. tariff, fixing as it does freight rates upon a particular commodity between specifically named points, established what is known in tariff parlance as "commodity rates." There is not such unanimity in the classification of the rates under the intermediate rule. Appellant insists that these are likewise commodity rates in that they are upon the same specific merchandise, and the same rate is specified as to the named point next beyond the destination. P. R. R. contends they are not commodity rates, in that specific points and rates are not named. The distinction has some bearing in view of appellant's contention that the Kelly tariff is a class tariff, and that one of the general rules of tariff construction is that a commodity rate will not be affected by a subsequent class rate.

It seems to us that the rate made by operation of the intermediate rule is quite as definite and certain as the named rate between the specific points, and the Interstate Commerce Commission seems so to have decided. Miller & Lux v. S. P. Co. et al., 102 I. C. C. 137; Fruen Grain Co. v. La Crosse & S. E. Ry. Co., 132 I. C. C. 747; Reeb v. B. & O. R. R. Co., 136 I. C. C. 91. But it seems further that the definitions applied to commodity rates and class rates do not alone determine the question here.

If it be assumed for argument that the destination points in question are in fact intermediate points within the purview of the intermediate rule, how are they affected by the Kelly tariff in question? This would depend largely on the construction to be given the Kelly tariff. Appellant contends that since it purports to be but a modification or limitation of a class tariff, it is therefore itself a class tariff, and, being such, does not affect the I. T. R. commodity rates. And maintaining that the I. T. R. tariff rates to the intermediate points are likewise commodity rates, these likewise remain unaffected by the Kelly tariff.

We cannot so regard the Kelly tariff. While it deals only with a specific commodity not less than does the I. T. R. tariff, and while it does not name any rate points, it does set out in cents the actual class rates, and definitely prescribes in cents the new rate in place of the theretofore existing class rate. It takes on all the characteristics of a commodity rate surely not less than the commodity rate made by the application of the intermediate rule in the I. T. R. tariff. So tested it may reasonably be concluded that the rates of the Kelly tariff are in every essential respect commodity rates, and, being later promulgated, supersede the I. T. R. tariff rates, assuming that the I. T. R. tariff covered Indiana points except those named.

But the exception stated in the Kelly tariff casts some degree of embarrassment in the way of such a conclusion. The words "in the absence of specific commodity rates" cannot be ignored. Assuming that the rates of the Kelly tariff are commodity rates, if then the rates of the I. T. R. tariff made by the intermediate rule thereof are commodity rates in the same sense as those to the specifically named points, the effect of the exception in the Kelly tariff would be to except from its operations all the points of the I. T. R. tariff, as having specific commodity rates, and therefore not excepted from the Kelly tariff. If this were so the Kelly tariff would be wholly inoperative, if covering the same territory as the I. T. R. Such a result could not have been intended.

In a recent controversy involving, inter alia, these same tariffs and the same question as is here involved, and between appellant herein and opposite parties which include P. R. R., the Interstate Commerce Commission reached the conclusion that the rates of the Kelly tariff would prevail over the rates made by the intermediate clause of the I. T. R. tariff. Standard Oil Co. v. A., T. & S. F. Ry. Co. et al. (Division 1) 113 I. C. C. 597, (the Commission) 139 I. C. C. 297. The controversy there related in part to petroleum shipments from Wood River to destination points in Indiana, some of them the same as some of those here involved, and the question was as to which of these two tariffs applied.

Division 1, I. C. C., after characterizing the controversy as concerning an "unusually complicated and technical tariff situation," said: "The rates charged applied on the single group of commodities in the petroleum list; they were published in definite amounts; and prior to the raising by the complainant of the technical tariff question presented in this case, had been recognized by the carriers, the shippers, and by us, as the appli-

cable rates. In our opinion, they were sufficiently specified under the tariff provisions above referred to as to render the intermediate rules inoperative in connection with the traffic." It rested its decision in favor of the carriers upon the conclusion alone that the intermediate rule was inoperative against the specific provisions of the Kelly tariff. In the opinion by the Commission this same language of Division 1 is quoted with approval, and the same result was reached. While we are inclined to the same view, we are so far from being convinced that it is unjustified that we would not be warranted in applying here a rule different from that which under similar conditions was applied by this body, whose background of experience with such matters is so much broader than our own.

▬ P. R. R. contends further that the destination points here in issue are not intermediate to the named rate points; also that by the I. T. R. tariff it was never intended to fix rates to Indiana intermediate points, but only to points in the "Illinois Classification," including Chicago rate points in northwestern Indiana.

Of the first proposition the Commission said: "Without considering the question whether these destinations could be considered directly intermediate to Chicago or Chicago rate points division 1 found that: * * *" Neither did the Commission directly consider it.

We will venture some expression of our views on these propositions.

The I. T. R. tariff fixed rates from these points of origin to something over 1,600 named points. Of these over 1,400 are in Illinois, being nearly half of the total number of railroad stations in the state. Practically every station on the P. R. R. line from Formosa, which is near East St. Louis, east to the Indiana boundary, is named; and so with all the railroads which joined in this tariff. In all of Indiana but 19 points are named, of which 17 are in Lake county, the northwest county of the state, and two in the county next south. All the 19, and Bernice, Ill., are what are commonly known as Chicago rate points. The last rate point in Illinois on this P. R. R. line is Farrington, close to the Indiana border, and from this point to Bernice, Effner, and Gary no points or rates are named. There are other railroads running almost directly from the tariff points of origin to Bernice, Effner, and Gary, which are nearer by many miles than the route over the P. R. R. If the shipper may choose a circuitous rather than a direct route for reaching these rate points, and have for them the benefit of the Chicago rate, is he privileged also to choose this route for all the intermediate points and have the rate of the intermediate rule? If so, the possible effect would seem startling, at least to non-experts in tariff making and interpretation.

All of the various participating carriers which cross this state line have Illinois rate points close to the line, but none in Indiana, except that a few of them touch one or more of the 19 points about the northwest corner of the state. But by routes more or less circuitous most of them could participate in the movement of petroleum from the initial points of the I. T. R. tariff, ultimately reaching one of the Indiana named points, either over their own routes, or over the routes of others of the participating carriers; and shippers to points along the line between the last Illinois rate point and those in northwestern Indiana might be entitled to the same rate as these northern Indiana points. For example: This P. R. R. line divides at Terre Haute, that over which the shipments here in question passed extending northeasterly to Logansport, and thence northwesterly to the rate points. Another of its lines runs mainly east, through Indianapolis to Richmond, Ind., near the Ohio line; thence north through Ft. Wayne, and northwesterly to one or more of the Indiana rate points. Does this give the 17.5 cent rate to all the points along this line because of the fact that Indiana rate points may so be reached? By combination of routes over lines participating in this tariff it is safe to say that such routes would pass a large majority of the railroad stations of Indiana, which being thus in the line of travel would, by application of the intermediate rule, be entitled to the same rate. It is difficult, if not impossible, to conclude that thus by the application of the intermediate rule the Chicago rate was extended to the majority of Indiana points.

Whether or not the paragraph from the I. T. R. tariff quoted in above statement of facts, containing the words "Governed * * * on traffic to all other points, by Illinois Classification No. 11," etc., has bearing on this question we are unable to say. Omission of all explanation of it in evidence, briefs, and arguments, as well as in the I. C. C. opinions, makes us suspect it has not.

But it is insisted for appellant that P. R. R., by consenting to a rate from Wood River to Gary, and to the intermediate rule of

the I. T. R. tariff, must carry at that rate to Gary and points intermediate. But each of the other thirty-six concurring lines published the same rate to Gary, and to the 1,600 other named points. This does not mean that each of them undertook to carry freight to each of those points. Comparatively few of them touch any of these points or even the points of origin; but the rates were binding upon them to the extent that they might participate in the normal movement of the freight from origin to destination.

To illustrate again: If the Baltimore & Ohio, one of the lines which likewise participated in the I. T. R. tariff, undertook to carry carload petroleum from these points of origin to Gary over its own lines, it might do so over its line from East St. Louis across Illinois and Indiana to Cincinnati, Ohio, thence northeasterly to Deshler, Ohio, and northwesterly across Indiana to Gary. Indeed, this would be its shortest route. The last Illinois rate point along this route is Bridgeport, near the Indiana state line, and there is no other rate point until Gary is reached. Can it be said that because B. & O. concurred in the I. T. R. tariff it undertook by the I. T. R. intermediate rule to carry freight at the Gary rate from the points of origin to any point on its lines, first across southern, and then across northern Indiana?

We can only say we cannot believe that participation in this tariff would, through the operation of the intermediate rule, confer the Chicago rate upon all or any Indiana stations of these carriers over any line or lines of the participants whereby Gary or the other Indiana rate points may be reached.

Some of the destination points in issue in the case before the Interstate Commerce Commission were the same as some of those here in issue. Speaking generally of the points there in issue, Division 1 referred to them as being "on circuitous routes"; and in the opinion of the Commission it was said, "all the destinations being intermediate to Chicago or Chicago rate points on routes which would be circuitous to the latter point." We so regard as circuitous the Indiana rate points here in question, over the P. R. R. route which passes the destination points here in issue, in that the Indiana rate points (also Bernice, Ill.) may be reached by routes far more direct, and involving much less mileage, than the route passing the destination points in issue.

We are further satisfied that the I. T. R. tariff did not, through its "intermediate rule," fix rates to Indiana points; and that, in any event, the destination points here in issue are not "directly intermediate" within the purview of the intermediate rule.

The judgment of the District Court is affirmed.