## UPDIKE GRAIN CORPORATION v. ST. LOUIS & S. F. RY. CO.

### No. 9043.

Circuit Court of Appeals, Eighth Circuit.

Aug. 14, 1931.

Alfred G. Ellick, of Omaha, Neb. (Francis A. Brogan and Dana B. Van Dusen, both of Omaha, Neb., on the brief), for appellant.

Herman E. Kuppinger, of Omaha, Neb., for appellee.

Before KENYON and BOOTH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge. `

This is an appeal from a judgment rendered by the district court in favor of the appellee in certain consolidated causes of action in each of which appellee, plaintiff below, sought to recover an additional amount as freight on a grain shipment from· a point in Nebraska to a point in Alabama. The first of these several causes and the facts in connection with it are typical of all. The problem involved here will be indicated sufficiently by a statement of the facts in connection with this first cause of action.

In April, 1924, the appellee transported over its lines from St. Louis, Mo., to Birmingham, Ala., a carload of oats consigned by appellant at Randolph, Neb., to itself as consignee at Birmingham. The shipment had moved over one of appellee's connecting carriers, the Chicago, Burlington & Quincy Railroad Company, first from Randolph to Omaha, thence, after storage at Omaha, over the lines of the last-mentioned road to St. Louis where it was delivered to appellee for the last stage of its movement to Birmingham. Appellant paid as freight charges the sum of $236.80. The appellee contended and contends ·that the lawful charges were $307.20. The suit is to recover, with interest, the difference between these amounts.

Whether the lawful charges were $307.20 or the amount paid depends entirely (so it is conceded by the parties) upon whether the rate on such a shipment as that here was at the time of that shipment governed by what is called in the record C. B. & Q. tariff 1218–K. If that tariff did not apply to this shipment, judgment should have been, as it was, for appellee.

Tariff 1218–K fixed the freight to be paid per hundredweight on shipments of grain on the Chicago, Burlington & Quincy Railroad and named participating carriers (including appellee) from Randolph, Neb., to Vicksburg, Miss. It provided that such shipments might move over any one of several routes, as follows: Routes 20, 52, 116, 158, 174, 186. It provided further that "rates to * `* * Vicksburg, * * * will also apply to directly intermediate points on the St. L. S. F. (the appellee's lines). * * `*" Route

116 was described in the tariff as "via St. Louis and thence (by the) St. L. S. F.," that is, by the St. Louis and San Francisco Railway.

But the St. Louis & San Francisco Railway does not reach Vicksburg, Miss. It is possible, however, for a shipment from Randolph, Neb., to reach Vicksburg via the St. Louis & San Francisco Railway as follows: To St. Louis, Mo., via the Chicago, Burlington & Quincy Railroad, to Birmingham, Ala., via the St. Louis & San Francisco Railway Company, to Meridian, Miss., via the Alabama Great Southern Railway, to Vicksburg via the Alabama & Vicksburg Railroad. The two lines last mentioned also are of carriers participating in tariff 1218–K. If this circuitous route to Vicksburg is authorized by tariff 1218–K, then undoubtedly Birmingham is an "intermediate" point on that route. If it is also "directly intermediate," a shipment such as that here is entitled, as appellant urges, to the Vicksburg rate fixed in the tariff.

The contention of appellee is that route 116 named in tariff is a nullity, that it is an obvious tariff error, since it describes a route to Vicksburg by the St. Louis & San Francisco Railway by which Vicksburg cannot be directly reached. And it is true that Vicksburg cannot be so reached. Unless the tariff be given a meaning by construction beyond the ordinary significance of the words used, route 116 is not available for a shipment from Randolph to Vicksburg. Route 116, as given, is incomplete. May the shipper complete it by adding to it other lines (of carriers also parties to the tariff)? Is the language used in describing route 116, "via St. Louis, Mo., and thence (by the) St. L.-S. F.," equivalent in meaning to "via St. Louis, Mo., and thence (by the) St. L. S. F. and lines (of participating carriers) beyond"?

We think it appears clearly from a consideration of the whole of tariff 1218–K (and the whole would be considered in arriving at the meaning of any, especially an indefinite portion, Portland Cattle Loan Co. v. Oregon Short Line R. Co. (9 C. C. A.) 251 F. 33, 35) that a shipper may not complete an incomplete routing save where, in the tariff, the incomplete routing is followed by the words, "and lines beyond." Throughout this tariff incomplete routings are so supplemented. Thus route 22 is described as "I. C.-Y. & M. V. and lines beyond"; 63 as "M. & O. etc., and lines beyond"; 64 as "M. & O., etc., and lines beyond"; 86 as "So., and lines beyond"; 88 as "So., etc., and lines beyond";

126 as "St. L. S. F., etc., and lines beyond"; 144 as "I. C.-Y. & M. V., and lines beyond." The repeated use in the tariff of this phrase (wholly unnecessary if appellant's contention is correct) indicates an intention that only when so authorized may the shipper complete a routing with the lines of other participating carriers. *Expressio unius est exclusio alterius.*

But if it be conceded that, under tariff 1218–K, route 116, as completed by the shipper, by adding the lines of the Alabama Great Southern (from Birmingham to Meridian, Miss.) and the lines of the Alabama and Vicksburg (from Meridian to Vicksburg), is an available route to Vicksburg, although obviously circuitous, there is still the question whether Birmingham is a "directly intermediate" point and as such entitled to the Vicksburg rate.

Birmingham is indeed on any such route as that constructed by the shipper an "intermediate" point, as are scores of other towns and cities located in Alabama, but in any common-sense view of the situation it seems absurd to say that Birmingham is "directly intermediate" between a shipping point in Nebraska and Vicksburg, Miss. If the word "directly" in the phrase "directly intermediate" means anything [and in the construction of a tariff effect should be given to every word, clause, and sentence, Pillsbury Flour Mills Co. v. Great Northern Ry. Co. (8 C. C. A.) 25 F.(2d) 66, 69], it would seem at least to suggest a point on a route reasonably direct from the point of origin to the specified destination. Such is the more plausible construction of the phrase "directly intermediate." Such was the construction given it by the Circuit Court of Appeals for the Seventh Circuit in Standard Oil Co. v. Pennsylvania R. Co., 40 F.(2d) 52. Birmingham is, not only not on any direct route from points in Nebraska to Vicksburg, but it is wholly outside and remote from the trade territory embraced in tariff 1218–K.

Precisely the same question as that here was presented to Division 4 of the Interstate Commerce Commission in Russell Grain Co. v. Alabama Great Southern Railway Company et al., 113 I. C. C. 699, and on further argument to the full commission in the same case, 126 I. C. C. 405. Tariff 1218–K was involved in that case as it is in this.

The shipper in that case, the Russell Grain Company, sought to avail itself of the Greenville, Miss., rate on shipments to Atlanta, Ga. Tariff 1218–K named route 2 as

one of several routes to Greenwood. Route 2 was described as "I. C.," i. e., the Illinois Central. The Illinois Central did not reach Greenwood. The shipper selected that route, claiming the right to complete it by adding lines of other participating carriers and then contending that upon the route thus completed Atlanta was a "directly intermediate" point and as such entitled to the Greenwood rate. In addition to the incomplete route 2, other complete routes to Greenwood were named in the tariff, just as, in the present case, in addition to the incomplete route 116, other and complete routes to Vicksburg are set out in the tariff. Division 4 of the Interstate Commerce Commission said:

"There is merit in defendant's contention that the naming of certain routes to Greenwood eliminated all other routes. This is in harmony with rule 4 (j) of our Tariff Circular 18-A, the pertinent portion of which reads:

"The different routes via which tariff applies may be shown, together with appropriate reference to the application of rates. When a tariff specifies routing the rates may not be applied via routes not specified.

"The tariff under discussion specified numerous complete routes to both Greenwood and New Orleans, none of which operated through Atlanta, Ga., Attalla, Birmingham, Bessemer, Ala., or Winchester, Tenn. A shipper is presumed by the law to know the provisions of the tariff under which his traffic is offered for transportation. Regardless of the complete specific routings shown in the tariff the complainant ignored such routes and attempted to construct unauthorized routes via which the destination points of the shipments would be intermediate to Greenwood and New Orleans.

"It is further to be observed that in connection with the various routes shown in the tariff to either Greenwood or New Orleans no junction point is named which is located outside of the Mississippi Valley territory. This, it seems to us, indicates very clearly that the authorization of an unusual or an unduly circuitous route is not contemplated. Furthermore a reasonable interpretation of the Illinois Central routing shown in connection with Greenwood requires us to hold that it means the longest possible haul to that carrier and the delivery to a connection, in this case its subsidiary the Yazoo & Mississippi Valley, which reaches Greenwood reasonably direct."

After further argument in the same case before the full commission it was said:

"The tariff specified numerous complete routes to Greenwood, none of which operated through Atlanta. It did not specify the route contended for by complainant. It also specified route 2, which was incomplete. The latter route could only be used as published, thus permitting the Illinois Central to get a shipment to Greenwood over the line of any connecting carrier or carriers it might select. If the route contended for by complainant was available, so also would have been a route, for example, of the Illinois Central from East St. Louis to Birmingham, Ala., Central of Georgia to Albany, Ga., Atlantic Coast Line to Jacksonville, Fla., Seaboard Air Line to Norfolk, Va., Southern through Atlanta to Columbus, Miss., and Columbus & Greenville to Greenwood. All of the carriers named are parties to the tariff. If complainant's contention as to the application of the intermediate rule is also correct, the Greenwood rate would apply to any point on the route described. It will be noted that all of the destinations to which specific domestic rates are provided are Ohio River crossings or in Mississippi Valley territory, and that where the available routes specify junction points none of the junction points are east of Mississippi Valley territory. It will also be noted that where it was intended to leave the routing open beyond certain junctions it was done by adding 'and lines beyond.'

"Under all of the circumstances the construction of the tariff contended for by complainant seems to us unreasonable and not warranted by the provisions thereof."

While the decisions of the Interstate Commerce Commission are not conclusive here, they are of great weight. They are especially persuasive in this highly technical field of rate construction and rate interpretation.

Our conclusion is that route 116 as completed by the shipper was not an available route under tariff 1218–K, and that in any event Birmingham was not a "directly intermediate" point on that route.

This conclusion as to the first of the causes of action involved in this appeal is equally applicable to all.

The judgment below is affirmed.