# TOWNSEND *v.* LITTLE and Others.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

Argued November 26th, 1883.—Decided December 10th, 1883.

*Constructive Notice—Deed—Fraud—Secret Trust—Statutes—Utah.*

A, having acquired the right to occupy a tract of land in Salt Lake City, took possession of it and erected a public house thereon, and lived in it with his wife and B, his polygamous wife, carrying on a hotel there. He ceased to maintain relations with B, as his polygamous wife, but he being desirous to have the benefit of her services, both concealed this fact. He made a secret agreement with her, that if she would thus remain she should have one-half interest in the property. He acquired title to the property from the mayor under the provisions of the act of March 2, 1867, 14 Stat. 541, without any disclosure of the secret agreement. Subsequently A's interest therein passed into the hands of innocent third parties for value, without notice of the claim of B under the secret agreement: *Held*,

1. That B had no rights in the premises as against innocent *bona fide* encumbrancers and purchasers without notice of her claim.
2. That the joint occupation of the premises by A and B, under the circumstances, was no constructive notice of B's claim of right.
3. The territorial act under which a deed of the property was made to A by the mayor, directed that "deeds of conveyance of the same shall be executed by the mayor of the city or town, under seal of the corporation." A general act of the Territory at the time the deed was made required deeds to be witnessed. The deed to A bore the corporate seal, as required by the special act; but was not witnessed: *Held*, that the special act controlled the general act, and that the deed was good.

By an act of Congress passed March 3d, 1867, entitled "An Act for the relief of the inhabitants of cities and towns

upon the public lands," 14 Stat. 541, it was provided that whenever any portion of the public lands of the United States had been, or should thereafter be, settled upon and occupied as a town site, it should be lawful for the corporate authorities of the town to enter at the proper land office, at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof, according to their several interests, and that the execution of said trust, as to the disposal of the lots of said town, &c., should be conducted under such rules and regulations as might be prescribed by the legislature of the State or Territory in which the same might be situated.

In pursuance of the authority thus granted, the legislature of the Territory of Utah, by an act passed February 17th, 1869, Compiled Laws of Utah, 1876, page 379, provided that whenever the corporate authorities of any town should enter any public land occupied as a town site, such corporate authorities should give notice thereof, by publication in a newspaper for three months, whereupon any person claiming to be the rightful occupant, or entitled to the occupancy or possession of any lot or part thereof, should, within six months after the first publication of the notice, file in the probate court of the county a statement in writing, containing an accurate description of the particular parcel of land in which he might claim to have an interest, and the specific right, interest, or estate therein which he claimed to be entitled to receive; and that the filing of a statement should be considered notice to all persons claiming any interest in the lands described therein of the claim of the party filing the same; and that all persons failing to file such statement within the time limited by the act, should be forever barred the right of claiming or receiving such land, or any interest or estate therein, or in any part, parcel, or share thereof, in any court of law or equity. The act further provided that if there were no adverse claimants to a particular lot or parcel of land, the probate court should give notice to the person filing the statement claiming the same to produce his proofs in support of his statement, and the court, if satisfied from the proofs of the validity of such claim, should cause

judgment to be entered of record, and certify the fact to the mayor of the town, who should make to the party claimant a deed for the tract or parcel of land so adjudged to him.

The appellant, Elizabeth M. Townsend, brought this suit in the District Court for the Third Judicial District of the Territory of Utah, by which . she claimed title under the provisions of the . act of Congress and the act of the Legislature of the Territory of Utah, to the undivided half of a certain lot in the city of Salt Lake, which was particularly described in her bill of complaint.

She alleged that in the year 1867 she and the defendant, James Townsend, went into the actual possession of said premises; that from the date just mentioned until March 1st, 1778, they jointly occupied and improved said property and kept a hotel thereon, known as the Townsend House; that they occu- pied said premises as two persons, for their mutual and equal benefit, mutually acknowledging each other's interest; that said premises formed part of a tract of land in Salt Lake City, in the Territory of Utah, subject to entry, which, on November 21st, 1871, was in fact entered at the United States land office in Salt Lake City by Daniel H. Mills, mayor of said city, in trust for the occupants thereof, under the act of Congress aforesaid; that at the date of said entry the appellant was, as to a half interest in said premises, one of the persons for whose relief said act of Congress was passed, and she and said Townsend were conclusively entitled to a conveyance of said premises from the mayor on complying with said rules and regulations; that on May 1st, 1873, Townsend obtained a deed from the mayor conveying the entirety of said premises to himself in fee, without the knowledge of appellant, and she was not informed thereof until a subsequent year; that when it came to her knowledge she requested Townsend to convey to her one-half of said premises, which he promised to do, admitting her right to the same, and that upon the obtaining of such deed from the mayor by Townsend a trust resulted in her favor, binding Townsend to convey to her the one undivided half of said premises, which he has never done. The bill further alleged that the defendants Hooper, Jennings and

Roberts claimed some interest in the premises, adverse to appellant, as purchasers, encumbrancers, or otherwise, but that their rights were only such as they had questionably derived from Townsend, with notice of appellant's possession and occupancy of said premises, and her consequent rights, and subject thereto. The bill prayed that the purchase of said premises by Townsend might be declared as to one-half thereof, as a purchase in trust by him for appellant, and that Townsend, Hooper and Jennings might be required to convey the same to her.

The defendant Townsend filed no answer. Roberts answered disclaiming any interest in the premises. Defendants Hooper and Jennings filed a joint answer, in which they denied all the averments of the petition, except that the premises in controversy were situate within the town site of Salt Lake City, and were subject to entry by the mayor under the act of Congress, and that Townsend had obtained a deed from the mayor for the whole of said premises. They averred that they were purchasers of said premises for a valuable consideration, without notice of the claim of appellant, and that they had no notice thereof until the bringing of this suit, and that appellant and Townsend had conspired to bring and maintain this suit for the purpose of defrauding them, well knowing that the claim of appellant was false.

The district court made a finding, from which the following facts appeared :

On March, 1865, the defendant, James Townsend, took possession of the premises in question, having purchased the possessory right thereto of one Clawson, who conveyed the same to him for the price of $6,000. Afterwards, in the years 1872 and 1873, he purchased the rights of other claimants for $3,000. All the purchase money for these claims was paid by Townsend out of his own means. In the fall of the year 1866 he went on the premises to reside, taking with him his lawful wife, whom he had married in 1828, and the appellant as a plural or polygamous wife. He kept a hotel on the premises from that date until February, 1878, which was known as the Townsend House, and was carried on in his name solely, and he was rep-

resented to the public by every advertising agency as the sole proprietor. During all this time he and the appellant lived together on the premises as husband and polygamous wife, the appellant taking an active part in conducting the business of the hotel. The lawful wife of Townsend also lived with him as such on the same premises until her death in 1870.

In the fall of the year 1867, Townsend and appellant entered into a verbal agreement with each other, whereby Townsend stipulated that if appellant would continue to live at the Townsend House and assist in carrying on the business of the hotel, as she had theretofore done, he would convey to her a one-half interest in the real and personal property of the hotel.

During the fall of the same year Townsend took another polygamous wife, but ostensibly continued his cohabitation with the appellant as his polygamous wife, the motive of both being to conceal from the public any change in their relations to each other.

On November 21st, 1871, the mayor of Salt Lake City entered in the land office and paid for the lands embraced in the town site of Salt Lake City, in trust for the occupants thereof, and received a patent therefor on June 1st, 1872. The mayor gave for the period of three months the public notice required by law of such entry, the first publication being on November 24th, 1871. Within the time allowed by law for occupants to assert their claims to the lands embraced in said town site, Townsend applied for a conveyance to himself of the premises in controversy, and in due course of proceedings in the probate court was adjudged to be the rightful occupant thereof and entitled to a deed therefor. Whereupon the mayor, on May 1st, 1873, executed and delivered to him a deed under his corporate seal of the city, purporting to convey to him the whole of said premises in fee in execution of said trust, but said deed was without witnesses.

The appellant did not, within six months after the first publication of notice of entry of said town site by the mayor, or at any time, make or deliver to the clerk of the probate court of said county any description of said premises, or of any right, interest or estate claimed by her therein, or make any claim

as an occupant or otherwise to a conveyance of any interest therein under the town-site laws.

After his purchase of the possessory right to said premises, and before the fall of 1868, Townsend expended in the erection of buildings thereon the sum of $16,000. On October 1st, 1868, he borrowed of defendant Hooper the sum of $5,000, and on December 8th, 1868, a further sum of $5,000. For these sums he executed his several notes and deeds of trust on the premises to secure the same.

On September 24th, 1873, the indebtedness of Townsend to Hooper on these notes amounted to $12,500, and on that day he renewed the same by giving Hooper his three notes, two for $5,000 each and one for $2,500, due in one year, and at the same time executed a deed of trust to trustees to secure the same.

On October 10th, 1876, Townsend gave his note to defendant Roberts for $5,000, payable in one year, and secured it by a deed of trust upon the same premises. This note afterwards by assignment became the property of defendants Hooper and Jennings.

Afterwards Townsend contracted other debts, which, either by deed of trust or judgment, became liens on said premises, and by various assignments the defendants Hooper and Jennings became the owners and holders of all the debts secured by lien on said premises. On April 10th, 1878, the sum of $16,425 was due on the notes executed by Townsend to Hooper on September 24th, 1873, and the trustees named in the deed of trust to secure the same, in pursuance of the power thereby conferred, sold said premises to defendant Jennings for $22,500, which sum he paid, and it was applied to the discharge of the several liens on the property in the order of their priority. Jennings afterwards conveyed an undivided half of the premises to his co-defendant Hooper.

During all their transactions with Townsend the defendants Hooper, Jennings, and Roberts dealt with him, prior to the proceedings in the probate court under the town-site law, as the sole owner of said premises, as against every one save the United States, and subsequently thereto as absolute sole owner,

without any actual or constructive notice of any claim of the appellant; and neither the trustees in said trust deed, nor the defendants Hooper, Jennings, and Roberts, nor any of them, had any notice of the claim of the appellant to any interest in or right to said premises until after the bringing of this suit.

Upon this finding of facts the district court dismissed the bill of complaint. Its decree was carried to the supreme court of the Territory by appeal, where it was affirmed. The decree of the latter court affirming the decree of the district court is brought under review by the present appeal.

*Mr. James H. Mandeville* submitted the case for the appellant.

*Mr. P. L. Williams* for the appellee.

Mr. Justice Woods delivered the opinion of the court. After stating the facts in the foregoing language, he continued:

The facts found by the court leave no ground for the appellant's case to rest on. Whatever rights, if any, she might have as against Townsend, had he continued the owner of the premises in controversy, she certainly has none against innocent *bona fide* incumbrancers and purchasers without notice of her claim. The arrangement between Townsend and the appellant was a secret agreement known only to themselves, and, as found by the court, they, after the agreement, continued to live together, as they had previously done, in order that the public might not know that any change had taken place in their relations to each other. A secret agreement, as between herself and Townsend, which they purposely kept concealed, cannot be set up against *bona fide* purchasers without notice. The finding of the court that neither Hooper, Jennings, nor Roberts had notice. either actual or constructive, of appellant's alleged rights, cuts up by the roots all claim on her part as against them to the premises in controversy.

Appellant contends, however, that her joint physical occupancy with Townsend of the premises, as found by the court, was constructive notice to the defendants Hooper and Jennings of her alleged rights, and that they therefore purchased in

subservience thereto. When Townsend, in 1866, entered into possession of the premises which he had previously bought with his own money, he took with him his lawful wife and the appellant, his polygamous wife. At that time it is not disputed that he was the sole occupant under the act of Congress. The appellant was no more a joint possessor at that time than any servant or guest of the hotel. A secret agreement subsequently entered into between Townsend and the appellant, and purposely kept concealed from the public by them, cannot be held to change the nature of Townsend's occupancy so as to affect with constructive notice persons who had no actual notice.

Constructive notice is defined to be in its nature no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted. *Plumb* v. *Fluitt*, 2 Anst. 432; *Kennedy* v. *Green*, 3 My. & K. 699. Where possession is relied on as giving constructive notice it must be open and unambiguous, and not liable to be misunderstood or misconstrued. *Ely* v. *Wilcox*, 20 Wis. 523; *Patten* v. *Moore*, 32 N. H. 382; *Billington* v. *Welsh*, 5 Bin. 129. It must be sufficiently distinct and unequivocal so as to put the purchaser on his guard. *Butler* v. *Stevens*, 26 Maine, 484; *Wright* v. *Wood*, 23 Penn. State 120; *Boyce* v. *Williams*, 48 Ill. 371. As said by Strong, J., in *Meehan* v. *Williams*, 48 Penn. State 238, what makes inquiry a duty is such a visible state of things as is inconsistent with a perfect right in him who proposes to sell. See also *Holmes* v. *Stout*, 3 Green. Ch. 492; *McMechan* v. *Griffing*, 3 Pick. 149; *Harwick* v. *Thompson*, 9 Ala. 409.

Tested by these rules, it is plain that the physical occupancy of the premises in question by appellant, as found by the district court, was not such possession as to put a purchaser on inquiry and charge him with constructive notice. On the contrary, viewed in connection with the other facts found, it was such as to mislead him.

The case of appellant is, therefore, an attempt to set up a secret trust as against *bona fide* purchasers for value without notice. But nothing is clearer than that a purchaser for a valuable consideration, without notice of a prior equitable right,

obtaining the legal estate at the time of his purchase, is entitled
to priority in equity as well as at law, according to the well-
known maxim that when equities are equal the law shall pre-
vail.    *Williams* v. *Jackson,* 107 U. S. 478; *Willoughby* v. *Wil-
loughby,* 1 T. R. 763; *Charlton* v. *Low,* 3 P. Wms. 328; *Ex
parte Knott,* 11 Wis. 609; *Tildesley* v. *Lodge,* 3 Sm. & Giff.
543; *Shine* v. *Goff,* 1 Ball & B. 436; *Bowen* v. *Evans,* 1 Jones
& La. T. 264; *Vattier* v. *Hind,* 7 Pet. 252.    This is the case
of defendants Hooper and Jennings.

The appellant contends, however, that as the deed executed
by the mayor of Salt Lake City to Townsend was without wit-
nesses as required by the general law of the Territory, it did
not convey the legal title.    But the act of the territorial legis-
lature providing for the conveyance to occupants by the mayor
of lands included in the town site did not require witnesses to
his deed.    It merely directed that " deeds of conveyance for
the same shall be executed by the mayor of the city or town
under the seal of the corporation."    According to the well set-
tled rule, that general and specific provisions, in apparent con-
tradiction, whether in the same or different statutes, and with-
out regard to priority of enactment, may subsist together, the
specific qualifying and supplying exceptions to the general, this
provision for the execution of a particular class of deeds is not
controlled by the law of the Territory requiring deeds generally
to be executed with two witnesses.    *Pease* v. *Whitney,* 5 Mass.
380; *Nichols* v. *Bertram,* 3 Pick. 341; *The State ex rel. Fos-
dick* v. *Perrysburg,* 14 Ohio St. 472; *London, etc., Railway*
v. *Wandsworth Board of Works,* Law Rep. 8 C. P. 185;
Bishop on the Written Laws, § 112 *a.*    The deed of the mayor
to Townsend having been executed in conformity with the
special act was therefore valid and effectual to convey the
legal title.

The result of these views is that the appellant has failed to
show herself entitled to the relief prayed in her bill.

*The decree of the Supreme Court of the Territory of Utah
affirming the decree of the district court by which her bill
was dismissed must be affirmed.*