**TERRITORY OF ALASKA, Appellant,**

v.

**AMERICAN CAN COMPANY, Fidalgo Island Packing Company, Libby, McNeill & Libby, Inc., Nakat Packing Company, New England Fish Co., P. E. Harris Company, Inc., Pacific & Arctic Railway & Navigation Co., and Oceanic Fisheries Co., Appellees.**

No. 15070.

United States Court of Appeals Ninth Circuit.

June 27, 1957.

494

J. Gerald Williams, Atty. Gen., Territory of Alaska, Henry J. Camarot, Juneau, Alaska, for appellant.

H. L. Faulkner, San Francisco, Cal., R. E. Robertson, Juneau, Alaska, and W. C. Arnold, Seattle, Wash., for appellees.

Before HEALY, LEMMON, and FEE, Circuit Judges.

LEMMON, Circuit Judge.

In the face of the Alaska Legislature's mandate in 1953 that the Territory's Property Tax Act of 1949 "is hereby repealed," with certain specific and limited exceptions embodied in a special saving clause clearly not applicable here, the appellant insists that it can still "collect accrued and unpaid taxes for the years 1949, 1950, 1951 and 1952."

It is urged that this saving clause merely bestowed an "important *additional right* in the form of a pecuniary advantage [to] municipalities, schools and public utilities * * * but denied to the Territorial Government"; but that this "alleged special savings [*sic*] clause" should not protect the appellees from being held "personally liable for the unpaid taxes" for the earlier years.

In this connection, we may observe in passing that both parties repeatedly refer in their briefs to "savings" clauses—the appellant 44 times and the appellees 58 times. This palpable error, in which the Court below joined, and which, because of its frequency, can scarcely be regarded as typographical, occasionally is encountered even in some legal encyclopedias. For example, in 50 Am.Jur., Statutes, § 528, page 535, under the caption *"Express Saving Provisions in Repealing Statutes,"* we find the form "savings" and the form "saving" each used three times in the same paragraph, each time followed by the word "clause."

Since we are here dealing with statutory construction and not with bank accounts, "saving" is, of course, the precise word. See State of South Carolina v. Gaillard, 1880, 101 U.S. 433, 438, 25 L. Ed. 937; Bridges v. United States, 1953, 346 U.S. 209, 227, note 25, 73 S.Ct. 1055, 97 L.Ed. 1557; Bouvier's Law Dictionary, Rawle's Third Revision, 1914, volume 2, page 3007; 82 C.J.S. Statutes § 440, pp. 1014–1018; Webster's New International Dictionary, Second Edition, Unabridged, 1955, page 2223, *sub verbis* "saving clause."

In his argument supporting the finespun thesis that the appellees owe these back taxes in the face of a plain and—as to them—unqualified repeal, able counsel for the appellant displays more agility than persuasiveness.

1. *Statement of the Case*

On February 21, 1949, the Territorial Legislature of Alaska enacted the first general "Property Tax Act" of the Territory, Chapter 10, Session Laws of Alaska, 1949, hereinafter sometimes referred to as Chapter 10.

On March 12, 1953, the Property Tax Act was repealed by Chapter 22, Session Laws of Alaska, 1953, pages 73–74, which was passed over Governor Ernest Gruening's veto. Because of the crucial relevance of that repealing statute to the present lawsuit, we copy it below in full:

"To repeal the Alaska Property Tax Act enacted by Chapter 10, Session Laws of Alaska, 1949, as amended by Chapter 88, Session Laws of Alaska, 1949; *excepting from repeal certain taxes and tax exemptions;* and declaring an emergency.

"Be it enacted by the Legislature of the Territory of Alaska:

"Section 1. That Chapter 10, Session Laws of Alaska, 1949, as amended by Chapter 88, Session Laws of Alaska, 1949, be and it is hereby repealed.

"Section 2. Section 1 of this Act shall not be applicable to:

"(a) any taxes which have been levied and assessed by any municipality, school or public utility district under the provisions of Chapter 10, Session Laws of Alaska 1949, as amended, or which are levied and assessed during the current fiscal year of such municipality, school or public utility district; and

"(b) any exemptions from the taxes referred to in subsection (a) of this section, which have been granted under the provisions of Section 6(h) of Chapter 10, Session Laws of Alaska 1949.

"Section 3. An emergency is hereby declared to exist and this Act shall be in full force and effect for and after the date of its passage and approval." [Emphasis supplied.]

It may here be explained that Section 6(h) of Chapter 10, supra, refers to "incentive exemptions" that the Tax Commissioner of Alaska was authorized to grant to "new industries," and is not relevant to the present controversy.

Between April and May of 1955, the appellant filed eight separate complaints against the appellees seeking to recover a total of more than $175,000 in taxes, interest and penalties for various years between 1949 and 1952, inclusive. The appellees point out that these suits "were all personal actions against the several [appellees] seeking to recover taxes on both real and personal property combined without any attempt at segregation of one type of property from the other."

Each appellee filed a separate and identical motion to dismiss, alleging that the complaint did not state a claim upon which relief could be granted, and that the action was not brought within the time required by law.

On May 5, 1955, the appellant filed a counter motion to strike against four of the appellees, requesting the Court below to strike the motion to dismiss. The Court denied the motion to strike and granted the appellees' motion to dismiss the eight complaints, for the reasons stated in the Court's opinion, which was filed on January 4, 1956. D.C., 137 F.Supp. 181.

On February 7, 1956, the appellant filed a notice of appeal from the order of the Court below dismissing the complaints. On November 14, 1956, we ordered that the appeal "be dismissed for want of jurisdiction because of the lack of final judgment," and we remanded the cases to the Court below.

On December 11, 1956, the District Court filed a final judgment decreeing (1) that the complaints alleging a personal liability be dismissed; (2) that the complaints and the "numbered causes be dismissed on the merits for the reasons stated in the Court's opinion of January 4, 1956," supra; and (3) that neither the taxes nor the remedy under Chapter 10 "survived the repeal found in Chapter 22 SLA 1953," etc.

On the same day, a second notice of appeal was filed in this case. It is this second appeal that is now before us.

Four questions are presented by the appellant:

(1) Whether the Property Tax Act is a tax on the appellees for which they are personally liable, or is merely a tax upon their property;

(2) Whether the appellant is without a remedy to collect and enforce taxes due under the Property Tax Act;

(3) Whether the language in Chapter 22, supra, repealing the Property Tax Act, is a "special saving clause" nullifying the appellant's right under the "Territorial *General* Saving Clause," infra, "to collect accrued and unpaid taxes for" 1949–1952.

(4) Whether, in interpreting Chapter 22, supra, the terms and expressions of which are asserted to be ambiguous, "the Court is limited in ascertaining the legislative intent to only those statutory constructional aids of which it may take 'judicial notice' or whether it may refer to extrinsic aids, otherwise admissible

under the laws of evidence, which bear directly on such intent."

In our view, Question No. 3 is determinative of the issue.

### 2. Alaska's General Saving Statute

Section 19–1–1, Alaska Compiled Laws Annotated, 1949, as amended by Chapter 4, Extraordinary Session Laws of Alaska, 1955, reads as follows:

"*Effect of repeals or amendments.* The repeal or amendment of any statute shall not affect any offense committed or any act done or right accruing or accrued or any action or proceeding had or commenced prior to such repeal or amendment; nor shall any penalty, forfeiture or liability incurred under such statute be released or extinguished, but the same may be enforced, continued, sustained, prosecuted and punished under the repealing or amendatory statute save as limited by the ex post facto and other provisions of the Constitution, in which event the same may be enforced, continued, sustained, prosecuted and punished under the former law as if such repeal or amendment had not been made. When any act repealing a former act, section, or provision shall be itself repealed, such repeal shall not be construed to revive such former act, section, or provision, unless it shall be expressly so provided."

### 3. The Saving Section of the Repealing Act Overrides the General Saving Statute.

Section 2 of the Act of 1953, hereinafter the repealing act, must prevail over Section 19–1–1 of Alaska Compiled Statutes Annotated, hereinafter the general saving statute.

At the outset, we note that the very title of the repealing act underlines one of its main purposes; namely, that of "*excepting from repeal certain taxes and tax exemptions.*"

In John J. Sesnon Co. v. United States, 9 Cir., 1910, 182 F. 573, 576, certiorari denied, 1911, 220 U.S. 609, 31 S.Ct. 714, 55 L.Ed. 608, a case that came to this Court from Alaska, Judge Morrow observed:

"Where doubt exists as to the meaning of the statute, the title may be looked to for aid in its construction."

In the repealing statute before us, the participial phrase, "*excepting from repeal*" certain taxes, etc., without any qualification to the word "excepting," indicates that the term is to be taken in its ordinary restrictive sense.

Considering the repealing act as a whole, we should bear in mind that being a *special* or, in the words of the Supreme Court, a "*specific*" enactment, it qualifies and furnishes exceptions to the *general* repeal law of Alaska—Section 19–1–1, dealing with the "Effect of repeals or amendments," supra.

More than threescore and ten years ago, this rule was already "well settled" in Anglo-American law.

In Townsend v. Little, 1883, 109 U.S. 504, 512, 3 S.Ct. 357, 362, 27 L.Ed. 1012, the Court observed:

"According to the well-settled rule, that general and specific provisions, in apparent contradiction, whether in the same or different statutes, and without regard to priority of enactment, may subsist together, *the specific qualifying and supplying exceptions to the general,* this provision for the execution of a *particular* class of deeds is *not* controlled by the law of the territory requiring deeds *generally* to be executed with two witnesses. [American and English authorities cited.]" [Emphasis supplied.]

The principle is merely a corollary of the familiar maxim, *Expressio unius est exclusio alterius,* as was pointed out in Rybolt v. Jarrett, 4 Cir., 1940, 112 F.2d 642, 645:

"There is some force here in the maxim Expressio unius est exclusio alterius. When in a statute of such clean cut restrictive force, the legislature undertook to make certain explicit exceptions, it seems a fair im-

plication that the legislature intended to exclude other exceptions, and thus to make the statute say what it means and mean what it says."

Similarly, in Jones v. H. D. & J. K. Crosswell, 4 Cir., 1932, 60 F.2d 827, 828, it was said:

"Being exceptions carved out of the general rule, intangible property not *specifically* mentioned as being tangible property must be excluded. The maxim 'expressio unius est exclusio alterius' applies. *It is a well-settled principle of statutory construction that the expression of one thing excludes others not expressed.* [Many cases cited.]" [Emphasis supplied.]

The principle is well established in California. In Los Angeles Brewing Co. v. City of Los Angeles, 1935, 8 Cal.App.2d 391, 398, 48 P.2d 71, 74, cited in the Stanford Law Review of January, 1949, Volume 1, Number 2, Page 371, Note 2, the Court remarked:

"As section 22 or article 20 [of the Constitution of California] *was adopted last, as it is special in dealing with this subject of the control, licensing, and regulating of 'the manufacture, sale, purchase, possession, transportation and disposition of intoxicating liquor within the State'* and as it shows an intention to remove the licensing for revenue of those so dealing in intoxicating liquors from the realm of a municipal affair to that of a matter of general state-wide concern, its provisions must be held to control over those of section 6 of article 11 of the Constitution [authorizing cities and towns to legislate "in respect to municipal affairs"] and vest in the state the exclusive and sole right to license for the purpose of revenue those engaged in the business of manufacturing, dealing in or handling intoxicating liquors." [Emphasis supplied.]

So far we have looked at the authorities dealing with the *general* application of the principle of "The expression of one is the exclusion of others." But there is a leading and oft-quoted decision that applies the venerable maxim to the precise question that we are here considering; namely, the conflict between a *general* repeal provision and a *special* repeal provision.

We refer to State v. Showers, 1885, 34 Kan. 269, 8 P. 474, 476–477, where the entire question was lucidly discussed:

"The offense of which the defendant was found guilty was committed in violation of section 7 of the prohibitory liquor law as enacted in 1881, and the prosecution for such offense was commenced and conducted to its final termination after said section had been amended and the original section repealed by an act taking effect March 10, 1885; and the first question presented to this court, * * * is whether the defendant could be punished for a violation of the old section when the prosecution had not been commenced until after it had been amended and repealed." 8 P. at page 475.

The general saving statute of Kansas at that time read in part as follows:

"The repeal of a statute does not revive a statute previously repealed, nor does such repeal affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed." Compiled Laws, 1879, c. 104, § 1.

It will be observed that the above Kansas statute was closely similar in effect to the General Saving Act of Alaska, § 19–1–1, supra. On the other hand, § 19 of the repealing act of 1885, supra, contained the following special *saving* proviso:

"All prosecutions pending at the time of the taking effect of this act shall be continued the same as if this act had not been passed."

With this legislative and factual situation before it, the Supreme Court of Kansas said:

"The question as to what should be repealed and what saved was before the legislature. They had the entire subject-matter thereof under consideration, and evidently intended to cover the entire ground; and evidently intended that nothing should be repealed except what they expressly repealed, and that nothing should be saved except what they expressly stated should be saved. They expressly saved some things; therefore it must be inferred that they intended to save no others. *Expressio unius est exclusio alterius.* The legislature evidently intended that the special saving clause which they enacted in section 19 of the act of 1885 should take the place of all others, so far as prosecutions under original section 7 were concerned; and *that in cases where the special saving clause could apply the general saving statute should have no operation.* 'It is a well-settled rule of construction that specific provisions relating to a particular subject must govern in respect to that subject, as against general provisions in other parts of the law which might otherwise be broad enough to include it.' Felt v. Felt, 19 Wis. [193] 196. 'It is familiar law that a later statute will operate as a repeal of a former, though it contains no express repeal, and even though its provisions are not absolutely repugnant to those of the former, whenever it is obvious that the one was intended as a substitute for the other.' [Cases cited.]

"If, however, the saving clause in section 19 of the act of 1885 was not intended by the legislature to cover the entire ground, and to be a substitute for the general saving statute so far as cases like this are concerned, then the saving clause contained in section 19 of the act of 1885 has no office to perform, but is absolutely worthless, for the general saving clause would save all that it saves and very much more. Such an interpretation of the law as this would violate all proper canons of construction. It would in effect say that the legislature had done the very foolish thing of enacting a saving clause which can have no real operation at all, and can subserve no actual purpose whatever. 'It is a well-settled rule that when any statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled. To hold otherwise would be to impute to the legislature gross carelessness or ignorance, which is altogether inadmissible.' Ellis v. Paige, [1 Pick. 43] 18 Mass. [43] 45." [Emphasis supplied.]

Emphasizing that the *general* saving statute comes into play only where the repealing act is "silent as to whether the rights and remedies" under the old law are to be saved, the Supreme Court of Kansas said in conclusion:

"The theory upon which it has been held by this court that the general saving statute is applicable in cases of repeals is that where the repealing statute is *silent* as to whether the rights and remedies which had previously accrued under the repealed statute should be saved or not, such silence indicates an intention on the part of the legislature that the general saving statute should be left to operate upon the repeal, and to save all such rights and remedies as come within the saving provisions of the general saving statute. [Case cited.] In the present case, however, the repealing statute is not *silent,* for it itself contains a saving clause which shows that it was not the intention of the legislature to rely upon the general saving statute.

"For the reasons above stated we think the present action cannot be

maintained. The judgment of the court below will therefore be reversed and cause remanded for further proceedings.

"(All the justices concurring.)" 8 P. at pages 477–478.[1]

Both on reason and authority, therefore, we hold that § 2 of Chapter 22 of 1953, the repealing statute, means precisely what it says; namely, that Chapter 10 of the Session Laws of Alaska, 1949, shall "be and it is hereby repealed," except "any taxes which have been levied and assessed by any municipality, school or public utility district," etc., including such taxes levied and assessed for the "current fiscal year"—taxes which are not in controversy here, and which alone are saved from repeal.

With the above exclusive exception, Chapter 10, Session Laws of Alaska, 1949, is no longer of any force or effect —as to past, present, or future years.

 4. *The District Court Did Not Err in Excluding from Evidence H.B. No. 3 and S.B.No. 5.*

The appellant asserts that "Because of the ambiguity of the statute and the direct bearing on the legislative intent, the Court should have considered the bill originally introduced and the amendments thereto, which preceded the final adoption of Chapter 22, SLA 1953".

Specifically, the appellant urges as error the lower court's rejection of "both the original House Bill No. 3 and Senate Bill No. 5, Twenty-first Session, Territory of Alaska Legislature".

The record shows that only House Bill No. 3 was offered in evidence. The appellant counters with the statements that Senate Bill No. 5 "was identical in all respects to House Bill No. 3"; that an authenticated copy was formally filed in the District Court with the Territory's brief; and, "alternatively", that the Senate bill "could have been called to the Court's attention by citing page 32 of the 1949 Senate Journal (which is conceded by the appellees to be subject to judicial notice) wherein the word-for-word likeness of the *title* of Senate Bill No. 5 and House Bill No. 3 clearly indicates both bills to be indistinguishable in form, design or purpose".

We accept the appellant's "alternative" point at its face value, and hold that the title of the Senate bill and the House bill indicate that they are "indistinguishable". By a parity of reasoning, however, we also hold that the title of House Bill No. 3 as introduced and the title of the House bill as enacted "clearly indicate" their differences.

As originally introduced, the bill, according to its title, was offered for the purpose of abrogating and repealing all accrued and unpaid taxes levied thereunder"; while the Act as passed carried a title showing that the new statute was "excepting from repeal certain taxes and tax exemptions". The extract from the Senate Journal printed in the appendix to the appellant's opening brief in this Court also shows that a "new Section 2" dealing with taxes levied "by any municipality, school or public utility district", etc., supra, was added by the Senate, and was concurred in by the House.

These changes in the House bill before its final enactment, however, are not relevant here.

In Trailmobile Co. v. Whirls, 1947, 331 U.S. 40, 60–61, 67 S.Ct. 982, 992, 91 L. Ed. 1328, the Supreme Court thus disposed of attempts to interpret statutes by minutely tracing "legislative maneuvers":

"These reasons, founded in the literal construction of the statute and the policy clearly evident on its face, are sufficient for disposition of the case. They are not weakened by

---

1. See also, on this question of the legislators' intention "that nothing should be saved except what they expressly stated should be saved", Wilmington Trust Co. v. United States, D.C.Del.1928, 28 F.2d 205, 208; and on the general application of the "expressio unius" maxim, see also Ainsworth v. Bryant, 1949, 34 Cal. 2d 465, 472, 473, 211 P.2d 564, 568; 50 Am.Jur. § 528, page 535; 82 C.J.S. Statutes § 440(a), p. 1015.

the Government's strained and unconvincing citation of the Act's legislative history.

"That argument is grounded in conclusions drawn from changes made without explanation in committee [as in the statute before us] with respect to various provisions finally taking form in § 8, changes affecting bills which eventually became the Selective Training and Service Act [50 U.S.C.A.Appendix, § 301 et seq.] and the National Guard Act, 54 Stat. 858, 50 U.S.C.A. Appendix, § 401 et seq. Apart from the inconclusive character of the history, the Government's contention assumes that the only alternatives presented by the final form of the bill were indefinite duration for the incidents of the employment named and none at all. This ignores the other possibilities considered in this opinion, including duration for a reasonable time. Moreover, as has been noted, *the most important committee changes relied upon were made without explanation. The interpretation of statutes cannot safely be made to rest upon mute intermediate legislative maneuvers.*" [Emphasis supplied.]

We hold that the trial court did not commit prejudicial error in excluding evidence of the original House Bill No. 3 and the amendments thereto.

From the foregoing, it will be seen that, since the limited saving clause did not preserve enough of the repealed tax statutes to be applicable against the taxpayers who are the appellees here, they are not liable either *in rem* or *in personam.* Any discussion, therefore, of the *personal* liability of the appellees as contradistinguished from the *in rem* liability of their property, would be moot.

In our view, the appellants are not liable either *in rem* or *in personam,* since the repealing act, as has been shown, completely wiped out *any* tax liability except as to municipal, school, or public utility district taxes, which are concededly not involved in the instant case.

5. *Conclusion*

Accordingly, it is the holding of this Court that the saving section of the repealing act relating to the Alaska Property Tax Law overrides the general saving statute; and that the Court below did not err in excluding from evidence House Bill No. 3 and Senate Bill No. 5.

The judgment of the District Court is therefore

Affirmed.

HEALY, Circuit Judge (dissenting).

I disagree with the holding of the majority that section 2(a) of chapter 22, Alaska Session Laws of 1953, nullifies the effect here of the Alaska General Savings Statute, section 19–1–1, Alaska Compiled Laws 1949. The relevant provisions of the latter are quoted below.[1] It is not at all clear that it was the legislative intent to wipe out the liability of those in the situation of appellees for unpaid taxes levied for the years 1949 through 1952, but rather that section 2(a) had another and different purpose.

Significantly, the history of the 1953 legislation shows that section 2 of the original bill was deleted in the course of the bill's consideration. That section in unmistakable terms had forgiven and abrogated all pre-1953 taxes. Concurrently, the phrase "and abrogating and repealing all accrued and unpaid taxes levied thereunder" was deleted from the

---

1. "Effect of repeals or amendments. The repeal or amendment of any statute shall not affect an offense committed or any act done or right accruing or accrued or any action or proceeding had or commenced prior to such repeal or amendment; nor shall any penalty, forfeiture or liability incurred under such statute be released or extinguished, but the same may be enforced, continued, sustained, prosecuted and punished under the repealing or amendatory statute save as limited by the ex post facto and other provisions of the Constitution, in which event the same may be enforced, continued, sustained, prosecuted and punished under the former law as if such repeal or amendment had not been made * * *."

bill's title. Thus the legislature had before it in the original bill clear language which would have forgiven the taxes here in question. It chose, instead, to reject the language.

In material part section 2(a) of the Act as finally passed reads:

"Section 2. Section 1 of this Act shall not be applicable to: (a) any taxes which have been levied and assessed by any municipality, school or public utility district under the provisions of Chapter 10, Session Laws of Alaska 1949, as amended, or which are levied and assessed during the current fiscal year of such municipality, school or public utility district; * * *."

In light of what has been said above, the section is fairly construable as intending no more than a grant to the municipalities and school and public utility districts—but not to the Territory itself —of the right to levy and collect taxes for the then current year, namely 1953, both before and after the repealing act had taken effect. There was a logical reason for granting this right to these local districts in that the legislature may well have felt it undesirable to interfere with their current fiscal programs, whether or not the levies for that year had yet been made. As so construed, section 2 (a) is readable in para materia with the General Savings Statute, above quoted, as not interfering with the collection of unpaid 1949–1952 taxes, either of the Territory or of the taxing districts.

As was recognized by the trial judge but is not mentioned in the majority opinion here, it is a fundamental rule of statutory construction that general savings clauses or statutes preserve rights and liabilities which have accrued under an act repealed, and that they operate to make applicable in designated situations the law as it existed before the repeal, *unless such application is negatived by the express terms or clear implication of a particular repealing act.*

My brothers, as I understand them, do not contend that such application is negatived by the express terms of the 1953

legislation, but rather is to be gathered by implication. To me, however, the legislation in the respects here in question is fundamentally ambiguous, both in its meaning and in the motives inspiring its enactment. Accordingly I dissent from the majority holding.