**DISTRICT OF COLUMBIA, Appellant,**

v.

**LINDA POLLIN MEMORIAL HOUSING CORPORATION, Appellee.**

**No. 6900.**

District of Columbia Court of Appeals.

Argued April 19, 1973.

Decided Dec. 28, 1973.

Rehearing and Rehearing en Banc Denied Feb. 6, 1974.

---

8. R. at 35.

9. In re Thomas W. Farquhar *supra*, slip op. at 7 (Wilkey, J., dissenting).

**580**

Richard G. Amato, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Henry E.

Wixon, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellant.

John R. Risher, Jr., Washington, D. C., for appellee.

Before KELLY, NEBEKER and PAIR, Associate Judges.

PAIR, Associate Judge:

This appeal by the District of Columbia (District) is from a decision of the Tax Division of the Superior Court* entered June 9, 1972, holding as a matter of law that the Linda Pollin Memorial Housing Corporation (Linda Pollin) is a "public charity" for purposes of D.C.Code 1967, § 47–801a(h) and therefore exempt from District real property taxation for fiscal years 1969 and 1970.[1]

Linda Pollin is a non-profit housing corporation organized May 12, 1965, pursuant to the District of Columbia Non-Profit Corporation Act.[2] Its declared purpose, among others, is:

> To provide dwelling accommodations for families displaced from urban renewal areas or as a result of governmental action and to assist further the provision of housing for moderate and low income families where no adequate housing exists for such groups.

To this end Linda Pollin entered into a "Regulatory Agreement for Non Profit and Public Mortgagors" with the Federal Housing Commissioner (F.H.A.), after which it sought, pursuant to Section 221(d)(3) of the National Housing Act, as amended (Housing Act),[3] and on June 15, 1965, obtained federal mortgage assistance.[4]

---

* Referred to hereafter in this opinion as the "Tax Court".

1. Real property taxes in the amount of $59,381.02 were assessed against the property for each of the fiscal years. The effect of the decision is, of course, to exempt such property from taxation in each fiscal year thereafter.

2. D.C.Code 1973, § 29–1001 et seq.

3. 48 Stat. 1246 (12 U.S.C. § 1701 et seq. (1901)).

4. The federal mortgage assistance consists of F.H.A. insurance of a mortgage in the amount of $4,848,400.00 payable in installments, with interest now at the rate of 3%, and maturing on June 1, 2007.

With the benefit of financing thus obtained, Linda Pollin constructed on lots 125, 810 and 811, in square 6159, in the District of Columbia, 20 garden-type centrally heated and air conditioned apartment buildings, a swimming pool, toddling pool, playground, and community building. Completed in 1966 at a cost of some 4.8 million dollars, the complex consists of 331 apartment units, ranging in size from one bedroom to four bedrooms, the latter having two baths.[5]

As provided by the regulatory agreement, F.H.A. approved initially a rental schedule for the apartment units based upon the number of persons in the family and the family income.[6] Prior approval of F.H.A. was required for any increase in the rental schedule deemed by Linda Pollin " . . . necessary to compensate for any net increase, occurring since the last approved rental schedule, in taxes (other than income taxes) and operating and maintenance expenses over which owners have no effective control."

Linda Pollin apparently paid all taxes assessed against the real property involved prior to March 17, 1969, because on that date it requested the District to make an administrative determination that such property was, for the purposes of D.C.Code 1967, § 47–801a,[7] exempt from real estate taxation for fiscal year 1969. A similar request was made for fiscal year 1970. The

District having failed to respond to either request, Linda Pollin on October 24, 1969, and again on November 24, 1970, petitioned the Tax Court for a judicial determination that its real property was exempt from District real property taxation.[8]

Upon consideration of the petitions and the District's opposition thereto, the Tax Court on June 9, 1972, concluded as a matter of law that Linda Pollin's real property, maintained as it was for the purposes set forth in its articles of incorporation, was used for public charity within the purview of D.C.Code 1967, § 47–801a(h), and therefore exempt from taxation. This appeal followed.

We notice at the outset what is apparent from a casual reading of D.C.Code 1973, § 47–801a, that the Congress has not specifically exempted the buildings and grounds of Linda Pollin from District real property taxation. We notice also that, prior to the decision of the Tax Court, there had been no determination—administrative or judicial—that the property was exempt under that section because used for purposes of public charity. Under the circumstances the decision of the Tax Court could be permitted to stand only if the buildings and grounds are, as a matter of fact, rather than as a matter of law as held by the Tax Court, used for purposes of public charity. *See* District of Columbia v. National Parks

---

5. Housing projects constructed pursuant to the Section 221(d)(3), program are intended to provide housing for families whose incomes are too high to qualify for public housing. S.Rep.No.281, 87th Cong., 1st Sess., § 7 (1961), 2 U.S.Code Cong. & Adm.News, p. 1929 (1961).

6. As of September 12, 1969, the maximum family income limits and the rental schedule were as follows:

| Number of persons | Annual Income |
| --- | --- |
| 1 | $ 6,600 |
| 2 | 8,000 |
| 3 or 4 | 9,400 |
| 5 or 6 | 10,800 |
| 7 or more | 12,200 |

| Unit | Number of Units | Rental |
| --- | --- | --- |
| 1 bedroom | 55 | $108 |
| 2 bedrooms | 164 | 127 |
| 3 bedrooms | 81 | 142 |
| 4 bedrooms | 31 | 159 |

7. The real property exempt from taxation in the District of Columbia shall be the following and none other:

    (h) Buildings belonging to and operated by institutions which are not organized or operated for private gain, which are used for purposes of public charity principally in the District of Columbia.

8. The petitions were consolidated for consideration and disposition.

Ass'n, 144 U.S.App.D.C. 88, 90–93, 444 F. 2d 963, 965–968 (1971).

We address, however, as a preliminary consideration the question raised by the District as to the jurisdiction of the Tax Court to make, in the first place, a judgment that the property was exempt because used for purposes of public charity. The District urges, in this connection, that any question respecting the exempt status of such property was resolved by the Congress when, by Section 202 of the District of Columbia Revenue Act of 1970 (Revenue Act), Pub.L.No.91–650, 84 Stat. 1932 (Jan. 5, 1971), D.C.Code 1973, § 47–801a, it amended paragraph (h) of that section by adding a new sentence which reads:

For purposes of this paragraph, any building—

(1) which is financed in whole or in part with (A) a mortgage insured under section 221(d)(3), (h), or (i) of the National Housing Act (12 U.S.C. 1715l) and receiving the benefits of the interest rate provided for in the proviso in section 221(d)(5) of such Act. . . .

. . . . . .

shall not, so long as the mortgage . . . remains outstanding . . . be considered a building used for purposes of public charity; *except that this sentence will not apply to those organizations granted an exemption under this paragraph before the date of enactment of this sentence.* [emphasis added.]

The question presented therefore is whether, in view of this amendment to D. C.Code 1967, § 47–801a(h), the Tax Court erred in adjudging that the real property of Linda Pollin, improved and maintained as it was with the benefit of federal mortgage assistance, was exempt from taxation.

The District's position is that since Linda Pollin was not an organization ". . . granted an exemption under this paragraph before January 5, 1971, the date of enactment of this sentence," the congressional mandate set forth in Section 202 of the Revenue Act is controlling.

Linda Pollin urges, however, as it successfully urged in the Tax Court, that because its petitions for a judicial determination respecting the exempt status of its property were pending on the effective date of the Revenue Act, the right to litigate the claim for exemption was preserved by the general saving clause in Section 803(a) of the Revenue Act.[9] The substance of this argument is that the general saving clause, Section 803(a) of the Revenue Act, preserved to Linda Pollin a right to litigate the very question which the Congress, by Section 202 of that Act, had specifically foreclosed.

In Cooley, The Law of Taxation § 672, it is said, at 1403:

An intention on the part of the legislature to grant an exemption from the taxing power of the state will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a special privilege or exemption is claimed under a statute . . . it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation.

The Tax Court said, strangely enough, that the amendment to Section 47–801a(h)

9. Sec. 803(a) reads:
The repeal or amendment by this Act of any provision of law shall not affect any other provision of law, any act done or any right accrued or accruing under such repealed or amended law, or any suit or proceeding had or commenced in any civil cause before repeal or amendment of such law; but all rights and liabilities under such repealed or amended laws shall continue, and may be enforced in same manner and to the same extent, as if such repeal or amendment had not been made.

"is retrospective as well as prospective. It is prospective in that it applies to nonprofit housing corporations for the years prior to the enactment . . . where those corporations have not filed for recognition of their exempt status prior to the date of the amendment. The amendment does not apply to the petitioner since it applied for recognition of its exempt status prior to the effective date of the Act."

■ But what the Tax Court seems to have overlooked or simply ignored is that in amending, by Section 202 of the Revenue Act, D.C.Code 1967, § 801a(h), no provision was made for non-profit housing corporations which had applied for recognition of an exempt status prior to the effective date of the Revenue Act. The sole concern of the Congress was with "those organizations granted an exemption under this paragraph before the date of enactment of this sentence", and such organizations the Congress specifically saved. Clearly, therefore, if the exception or special saving clause in Section 202 had not been intended to cover the entire field in this area of tax exemption, it served no purpose whatsoever. The reason for this is that the language of the general saving clause in Section 803(a) would be broad enough to save not only Linda Pollin but any other non-profit housing corporation claiming such a right, whether it had or had not applied for recognition of an exempt status. We cannot attribute to the Congress an intent to achieve any such inconsistent result. In 82 C.J.S. Statutes § 347b (1953), it is said:

General and special provisions in a statute should stand together, if possible, and be read together and, if possible, harmonized with a view to giving effect to a consistent legislative policy. Where, however, general provisions, terms, or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions must govern or control, as a clearer and more

definite expression of the legislative will . . . . [footnotes omitted.]

*See also* Maiatico v. United States, 112 U. S.App.D.C. 295, 301, 302 F.2d 880, 886 (1962).

True it is that the general saving clause preserved to Linda Pollin not only rights conferred by D.C.Code 1967, § 47–801a(h), but also the procedures required to vindicate such rights. The inescapable fact is, however, that prior to its amendment, Linda Pollin's rights under that paragraph consisted—at best—of only a bare possibility of exemption upon an administrative or judicial determination that its buildings and grounds were being used for purposes of public charity. That no such determination was made prior to the effective date of the Revenue Act is too clear for discussion. Consequently, on and after its effective date, neither the executive authority nor any court had jurisdiction to make a determination that the real property of Linda Pollin qualified for exemption under D.C.Code 1973, § 47–801a(h). *See and compare* United States v. Maryland S.–S. Ins. Corp., 400 U.S. 4, 7, 91 S.Ct. 16, 27 L. Ed.2d 4 (1970).

A somewhat similar factual situation was involved in Pentheny, Ltd. v. Government of Virgin Islands, 360 F.2d 786, 790–791 (3d Cir. 1966). There the court was concerned with an application for tax exemption filed under a statute then in force. During the pendency of the application the statute was repealed. By a saving clause in the repealing statute, grants of exemption under the prior law were specifically saved but no mention was made of applications for exemption which were pending when the new law took effect. Pointing out that jurisdiction once obtained may be lost by repeal of the law under which it was exercised, the court said

that the Legislature has the power to take away by statute that which has been given by statute except when to do so would amount to the impairment of a vested right. *The recall of a privilege,*

*an expectancy, a possibility, or an exemption, is not such an impairment for these do not constitute vested rights. . . .* [emphasis added.]

*Accord,* Maisonette Apartments, Inc. v. Government of the Virgin Islands, 407 F. 2d 236 (3d Cir. 1969).

In F. H. A. v. The Darlington, 358 U.S. '84, 91, 79 S.Ct. 141, 146, 3 L.Ed.2d 132 (1958), the Supreme Court reminded that:

Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end. . . .

Certainly, therefore, the Tax Court was required to apply the law in effect at the time its decision was rendered and to base its judgment upon the provisions of that law interpreted in accordance with its purpose and spirit, rather than upon conclusions reached after "subtle and involved reasoning." F. H. A. v. The Darlington, *supra.* To the same effect is Thorpe v. Housing Authority of Durham, 393 U.S. 268, 282, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969), where the Court quoted with approval what was said by Chief Justice Marshall more than 150 years ago:

[I]f subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional, . . . I know of no court which can contest its obligation. It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns . . . the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but

in violation of law, the judgment must be set aside.

*See also* Ziffrin v. United States, 318 U.S. 73, 78, 63 S.Ct. 465, 87 L.Ed. 621 (1943).

What the Congress obviously intended to accomplish when, by Section 202 of the Revenue Act, it amended D.C.Code 1967, § 47–801a(h), was to clarify and make, by legislative emphasis, more definite what had always been its intent respecting exemptions from District real property taxation. *Compare* Glidden Co. v. Zdanok, 370 U.S. 530, 541, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962); F. H. A. v. The Darlington, *supra.* The legislative history of Section 202 of the Revenue Act makes this crystal clear. *See* H.R.Rep.No.91–1672, set forth in the appendix to this opinion.

Moreover, it is not without significance that the title of the amendatory act declares its purpose, *i. e.,* "To provide additional revenue for the District of Columbia . . ." rather than to open avenues of escape from tax responsibility. Thus, it seems beyond dispute that the position of Linda Pollin could not have been improved by anything in the general saving clause of Section 803(a) of the Revenue Act.[10]

In any event, it is settled law that a general and a special saving clause in apparent contradiction may subsist together, whether they are in the same or a different statute and without regard to priority of enactment, the specific saving clause qualifying, supplying exceptions and taking precedence over the general saving clause. *See* Townsend v. Little, 109 U.S. 504, 3 S.Ct. 357, 27 L.Ed. 1012 (1883). In MacEvoy v. United States, 322 U.S. 102, 107, 64 S.Ct. 890, 894, 88 L.Ed. 1163 (1944), the Supreme Court, citing with approval D. Ginsberg & Sons v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932), and Townsend v. Little, *supra*, said in this regard:

However inclusive may be the general language of a statute, it "will not be held

10. *See* note 9, *supra.*

to apply to a matter specifically dealt with in another part of the same enactment. . . . Specific terms prevail over the general in the same or another statute which otherwise might be controlling." [D.] Ginsberg & Sons v. Popkin, 285 U.S. 204, 208 [52 S.Ct. 322, 323, 76 L.Ed. 704 (1932)] . . . .

Fourco Glass Co. v. Transmirra Prod. Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed. 2d 786 (1957), is to the same effect. *See also* Maiatico v. United States, *supra.*

A case almost directly in point is Territory of Alaska v. American Can Co., 246 F.2d 493, 495, 17 Alaska 280 (9th Cir. 1957). There the Territory sought to recover property taxes accrued prior to the repeal in 1953 of the Alaska property tax statute. Provided for by the repealing Act were certain specific and limited exceptions not involved in the action.[11] Notwithstanding the repeal of the property tax statute, the territory sought to recover from the American Can Company unpaid taxes assessed for the years 1949–1952, basing its right upon Alaska's general saving statute which then read in part:

*Effect of repeals or amendments.* The repeal or amendment of any statute shall not affect any . . . right accruing or accrued or any action or proceeding had or commenced prior to such repeal or amendment; . . . but the same may be enforced, continued, sustained . . . under the repealing or amendatory statute . . . .

Holding that the special saving clause in the repealing statute took precedence over the Alaska General Saving Statute, the court concluded that on and after March 12, 1953, the effective date of the repealing statute, the property tax law was no longer of any legal force and effect as to taxes assessed in either past, present or future years, with the exception of those taxes specifically saved. *Accord,* Rybolt v. Jarrett, 112 F.2d 642, 645 (4th Cir. 1940), where it was said:

There is some force here in the maxim Expressio unius est exclusio alterius. When in a statute of such clear cut restrictive force, the legislature undertook to make certain explicit exceptions, it seems a fair implication that the legislature intended to exclude other exceptions, and thus to make the statute say what it means and mean what it says.

■ From all of the foregoing, the conclusion is compelled that on and after January 5, 1971, the effective date of the Revenue Act, the specific exception or saving clause set forth in Section 202 thereof was controlling and neither the District nor any court had jurisdiction to make thereafter a determination of binding legal effect that the buildings and grounds of Linda Pollin are "used for the purposes of public charity" and, therefore, exempt from taxation. *See* District of Columbia v. National Parks Ass'n, *supra.*

With this disposition of the jurisdictional question, we find it unnecessary to determine whether, on this record, the buildings and grounds of Linda Pollin were in fact used for purposes of public charity.[12] *But see* Mountain View Homes, Inc. v. State Tax Commission, 77 N.M. 649, 427 P.2d 13 (1967), where the identical question was presented and disposed of adversely to the housing corporation.

Reversed.

11. Excepted from the provisions of the repealing statute were "[t]axes . . . levied and assessed by any municipality, school or public utility district."

12. It does not appear from the record that any tenant of Linda Pollin is a welfare recipient and, therefore, eligible for public housing, nor does it appear that any tenant would be permitted to remain in occupancy without payment in full of the prescribed rent.

APPENDIX

LEGISLATIVE HISTORY

The District of Columbia Revenue
Act of 1970

Pub.L.No. 91–650

H.R.Rep.No.1672, 91st Cong.,
2d Sess. (1970)

Section 202—Tax Statutes of Nonprofit
Charitable Organizations:

Section 202 of the bill merely clarifies the status of certain real property that is exempt from taxation in the District of Columbia. The section would amend section 1 of the Act of December 24, 1942 (56 stat. 1029 ch. 826) . . . . Specifically, subsection (h) of section 1 of that Act exempted buildings belonging to and operated by institutions which are not organized for private gain and which are used for purposes of public charity principally within the District of Columbia.

In the intervening years since 1942, the Federal government through various of its housing programs has in effect encouraged the formation of certain non-profit corporations organized to provide housing to certain groups by extending loans to such corporations through various subsidy programs. . . .

Several reasons may be given as to why these institutions do not now, nor were ever intended to, come within the exemption of section 47–801a(h).

. . . . . .

Certainly it is the determination of this Committee that the Congress in providing long-term housing subsidy programs in substantial amounts did not intend that this would have the effect of reducing the tax base in the District of Columbia. Moreover, it should be pointed out that under several of the programs mentioned in the amendment to section 47–801a(h), there is provision in the amount of loan made to the qualifying institutions for an amount to cover the real estate taxes assessed against such properties during the period of construction or renovation (a period during which presumably the institution would not be realizing any income from the property); thus illustrating the intent of Congress that these institutions should not be exempt from local real estate taxes.

. . .

The need for this clarifying amendment to the District of Columbia Code is illustrated in part by the colloquy which took place during the Hearings on these revenue proposals between the Chairman of Subcommittee No. 4, Congressman Don Fuqua, and the Chairman of the D. C. City Council, Honorable Gilbert Hahn (at pp. 158–159):

Mr. Fuqua. Mr. Hahn, there are a number of non-profit housing corporations that have been formed to take advantage of various housing programs funded by HUD and other federal programs. It is my understanding that some of these organizations have appealed for tax exempt status as far as real property is concerned. Is this having any impact on the revenues for real property in the District of Columbia?

Mr. Hahn. I am not as familiar with that as I might be. I would only mention that several weeks ago, when I got into the question of a certain number of real estate taxpayers who were delinquent in paying their taxes, we found that the Linda Pollin project about which there has been much in the newspapers, claimed they were not paying their real estate tax because they were applying for a congressional exemption.

. . . . . .

Mr. Fuqua. It is my understanding that in April of 1969 the Board of Equalization and Review reduced the taxes on this property; the assessed value was reduced from $960,175 to $112,869, and a total tax reduction from $28,805.26 to $3,498.92. They are now delinquent on the $3,000.

Mr. Hahn. That is correct, Mr. Chairman.

.    .    .    .    .    .

Mr. Fuqua. I know of no other community that grants property tax exemptions for these type organizations.

.    .    .    .    .    .

It is important that the District of Columbia should know with certainty what to expect by way of the collection of real estate tax revenue and the contribution that will make to the funds needed by the City for its maintenance and operation. In litigation currently pending in the local courts, the District of Columbia Government maintains that section 47–801a(h) as it now reads does not exempt property held by a non-profit housing corporation. But if, as appears, there is a scintilla of uncertainty now existing with respect to entitlement of the *privilege* of tax exemption as to properties held by certain of these non-profit institutions, that uncertainty should be laid to rest. The passage of this bill, incorporating as it does section 202, will accomplish this end both retrospectively and prospectively.